******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRENDA SNELL *v.* NORWALK YELLOW
CAB, INC., ET AL.
(SC 19929)

Palmer, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, a taxicab
company, its owner, and its employee, S, for personal injuries she sus-
tained when she was struck by a taxicab that had been stolen and driven
by two teenagers. The plaintiff alleged that S's negligence in leaving the
taxicab unattended with the key in the ignition in a high crime area
created the reasonably foreseeable risk that the taxicab would be stolen,
driven in an unsafe manner, and cause injury. The defendants raised as
a special defense the doctrine of superseding cause, claiming that the
intentional, criminal, or reckless acts of the two teenagers had broken
the chain of causation between S's alleged negligence and the plaintiff's
injuries and, thus, relieved them of liability. After the close of evidence,
the trial court held a charging conference at which it solicited comments
from counsel regarding its proposed charge on superseding cause, which
instructed the jury that, if it found that the theft of the taxicab and the
resulting accident involved intentional acts that were outside the scope
of the risk created by S's conduct, the defendants could not be held liable
for the plaintiff's injuries. The court also proposed a related interrogatory
asking the jury whether the defendants had proven that the accident
was outside the scope of the risk created by S's conduct. The plaintiff
objected to the instruction and interrogatory regarding the scope of the
risk, but the court overruled the plaintiff's objection and instructed the
jury on superseding cause. Thereafter, the jury returned a verdict for
the defendants, indicating in two separate interrogatories that, although
S's negligence was a proximate cause of the plaintiff's injuries, the
accident that ensued was outside the scope of the risk created by S's
negligence and, therefore, that the defendants were not liable for the
plaintiff's injuries. Subsequently, the plaintiff filed a motion to set aside
the verdict and for a new trial on the grounds that the court should not
have submitted the doctrine of superseding cause to the jury because
it was inapplicable and that the jury's answers to the interrogatories were
inconsistent. The trial court denied the motion and rendered judgment
in accordance with the verdict, from which the defendants appealed to
the Appellate Court. On appeal to that court, the defendants claimed,
inter alia, that the doctrine of superseding cause was not applicable
because the teenagers were merely criminally reckless and the doctrine
applies only to intervening acts that are unforeseeable and intended to
cause harm, and that the trial court improperly denied her motion to
set aside the verdict and for a new trial because the jury's responses
to the interrogatories that S's conduct was a proximate cause of the
plaintiff's injuries but that the manner in which her injuries occurred
was outside the scope of the risk created by S's negligence were inconsis-
tent. The Appellate Court affirmed the judgment of the trial court, con-
cluding that, although this court in *Barry* v. *Quality Steel Products,
Inc.* (263 Conn. 424) abrogated the doctrine of superseding cause in
cases in which intervening acts merely were negligent, it retained the
doctrine for unforeseeable intentional torts, forces of nature, and crimi-
nal events, which encompassed the acts of the teenagers. The Appellate
Court also rejected the plaintiff's contention that the jury's answers to
the interrogatories were inconsistent. On the granting of certification,
the plaintiff appealed to this court. *Held*:

1. The Appellate Court correctly concluded that the doctrine of superseding
   cause applies in cases in which the conduct of a third party is criminally
   reckless: a review of the case law addressing the doctrine of superseding
   cause and the history of tort reform in this state led this court to conclude
   that the doctrine applies to criminally reckless conduct, as the concerns
   that led this court in *Barry* to abrogate the doctrine in cases in which
   a defendant alleges that his negligent conduct is superseded by a third
   party's subsequent negligent act were not implicated in cases, like the

present one, involving a third party's subsequent criminally reckless act, because apportionment of liability is unavailable under such circumstances pursuant to statute (§ 52-572h [o]); accordingly, the doctrine of superseding cause is not limited to a third party's intervening act that was intended to cause harm and remains a viable defense in cases in which apportionment is unavailable, but a negligent defendant will not be relieved of liability by virtue of a third party's reckless or intentional conduct if the type of harm sustained by the plaintiff is within the scope of the risk that was created by the defendant's negligent conduct.

2. The Appellate Court incorrectly determined that that the jury's responses to the interrogatories were legally consistent and, therefore, improperly upheld the trial court's denial of the plaintiff's motion to set aside the verdict and for a new trial: under this court's precedent, a finding that a third party's conduct constitutes a superseding cause precludes the defendant's negligence from being deemed a proximate cause of those injuries, and, because the jury found in its interrogatories both that S's negligence was a proximate cause of the plaintiff's injuries and that the teenagers' actions were a superseding cause of those injuries, this court could not conclude that the jury followed the trial court's instructions with respect to the issue of causation; accordingly, the plaintiff was entitled to a new trial.

(*One justice concurring separately*)

Argued September 13, 2018—officially released August 13, 2019

*Procedural History*

Action to recover damages for the alleged negligence of the defendant Johnley Sainval, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the jury before *Povodator, J.*; verdict for the defendants; thereafter, the court, *Povodator, J.*, denied the plaintiff's motion to set aside the verdict and for a new trial, and rendered judgment in accordance with the verdict, from which the plaintiff appealed to the Appellate Court, *Keller, Prescott* and *Harper, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *new trial.*

*Adam J. Blank*, with whom was *Sarah Gleason*, for the appellant (plaintiff).

*Laura Pascale Zaino*, with whom were *Gregory S. Kimmel* and, on the brief, *Kevin M. Roche, Logan A. Carducci* and *Zachary M. Dunn*, for the appellees (named defendant et al.).

*Jeffrey R. Babbin* and *Christopher P. Kriesen* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. The plaintiff, Brenda Snell, brought this negligence action against the defendants, Johnley Sainval, a taxicab driver, his employer, Norwalk Yellow Cab, Inc. (Yellow Cab), and Vito Bochicchio, Jr., the sole shareholder of Yellow Cab, seeking damages for serious injuries she sustained when she was struck by a taxicab that had been stolen from Sainval by two teenagers after Sainval left the vehicle unattended with the key in the ignition in a Norwalk neighborhood known to have a higher than average crime rate. A jury trial ensued at which the defendants claimed, inter alia, that the conduct of the two thieves was a superseding cause that relieved Sainval of any liability to the plaintiff for his alleged negligence. At the conclusion of the trial, the jury, in response to interrogatories submitted to it by the trial court, found that Sainval was negligent in leaving the taxicab unattended with the key in the ignition; that, in light of the surrounding neighborhood, it was reasonably foreseeable that the vehicle would be stolen and operated in an unsafe manner; and that Sainval's negligence was a proximate cause of some or all of the plaintiff's injuries. The jury also found, nevertheless, that the defendants were not liable for the plaintiff's injuries because the accident that occurred was not within the scope of the risk created by Sainval's negligence.

The plaintiff thereafter filed a motion to set aside the verdict and for a new trial claiming, inter alia, that the jury's finding that Sainval's negligence constituted a proximate cause of the accident was legally inconsistent with its finding that the accident was outside the scope of the risk created by Sainval's negligence. The court denied the motion and rendered judgment in accordance with the jury's verdict. The plaintiff then appealed to the Appellate Court, claiming that (1) it was improper for the trial court to instruct the jury on the doctrine of superseding cause, (2) even if the doctrine were properly submitted to the jury, the court's instructions and interrogatories misled the jury, and (3) the trial court improperly denied the plaintiff's motion to set aside the verdict and for a new trial on the ground that the jury's verdict was irreconcilable with its responses to the interrogatories. *Snell* v. *Norwalk Yellow Cab, Inc.*, 172 Conn. App. 38, 41, 158 A.3d 787 (2017). The Appellate Court rejected the plaintiff's claims; id., 41–42; and we granted the plaintiff's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly determine that the judgment of the trial court should be affirmed on the basis that the doctrine of superseding cause applies in cases in which the conduct of a third party is criminally reckless?" *Snell* v. *Norwalk Yellow Cab, Inc.*, 325 Conn. 927, 927–28, 169 A.3d 232 (2017). And (2) "Did the Appellate Court correctly determine that the trial court did

not abuse its discretion when it denied the plaintiff's motion to set aside the verdict and for a new trial?" Id., 928. Although we answer the first question in the affirmative, we answer the second in the negative and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts, which the jury reasonably could have found, and procedural history. "On December 3, 2009, Sainval, who was employed by Yellow Cab as a taxicab driver, was operating a taxicab owned by Yellow Cab in Norwalk. In the early evening, he drove the taxicab to Monterey Village, a housing complex located in an area of the city with significant criminal activity. Sainval parked the taxicab and went inside one of the apartments, leaving the taxicab unlocked and unattended with the keys in the ignition.

"Two teenagers, Shaquille Johnson and Deondre Bowden, who that afternoon had been consuming alcohol and smoking marijuana, noticed the parked taxicab. Although they initially intended to steal anything of value that they could find inside the unlocked taxicab, once they observed the keys in the ignition, the two teens decided to steal the taxicab and to go on a 'joyride.' They drove the taxicab from Norwalk to Stamford, making one brief stop in between, with each of the teens taking a turn driving the vehicle.

"When they reached Stamford, they [encountered] traffic. At that time, Bowden was driving the taxicab. He 'kind of nodded off' and rear-ended the vehicle in front of him. Bowden, who was both 'tipsy' and 'high,' then attempted to flee the scene. In order to maneuver the taxicab around the vehicle he had struck, Bowden drove the taxicab up over the curb of the road and onto the adjoining sidewalk. In doing so, Bowden first hit a fire hydrant before striking the plaintiff with the taxicab.

"The plaintiff sustained severe physical injuries, particularly to her midsection, requiring millions of dollars in medical expenditures as of the time of trial, with additional treatments and surgeries expected. After hitting the plaintiff, Bowden never attempted to stop the vehicle; he and Johnson exited the stolen taxicab while it was still moving and fled the scene on foot, returning home by train. The police later identified the teens as the individuals involved in the hit and run of the plaintiff and arrested them.[1]

"The plaintiff initially commenced this action solely against Sainval and Yellow Cab.[2] Johnson and Bowden were not named by the plaintiff as defendants in the civil action. Although the defendants filed an apportionment complaint against the two teens, the court later granted the plaintiff's motion to strike the apportionment complaint, agreeing with the plaintiff that appor-

tionment was unavailable in the present case because the misconduct of the teenagers was not pleaded as mere negligence but as reckless or intentional conduct. See General Statutes § 52-572h (o) ('there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct'); *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 801, 756 A.2d 237 (2000) (recognizing that § 52-575h [o] was enacted to expressly overrule in part *Bhinder* v. *Sun Co.*, 246 Conn. 223, 234, 717 A.2d 202 [1998], in which [this court] had recognized [common-law] extension of statutory apportionment liability for parties whose conduct was reckless, wilful and wanton).

"The operative second amended complaint contains two counts relevant to the issues on appeal.[3] Count one sounds in negligence against Sainval. According to the plaintiff, Sainval acted negligently by leaving his taxicab in an unguarded public parking lot in a high crime area with the keys in the ignition, which created the reasonably foreseeable risk that the taxicab would be stolen and that a thief would drive the taxicab in an unsafe manner and cause injury to a person or to property. Count two alleges that Yellow Cab was vicariously liable for Sainval's negligence on a theory of respondeat superior. Prior to trial, Yellow Cab conceded that it would be liable to the same extent that Sainval was found liable on count one.

"In their amended answer, the defendants, by way of a special defense, raised the doctrine of superseding cause. The defendants pleaded that, '[i]f the plaintiff sustained the injuries and losses as alleged in her complaint, said injuries and losses were the result of the intentional, criminal, reckless and/or negligent conduct of a third party, which intervened to break the chain of causation between [Sainval's] alleged negligence and/ or carelessness and the plaintiff's alleged injuries and losses.' " (Footnotes altered; footnote in original, footnotes omitted.) *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 42–45.

"[T]he court initially indicated to the parties that it was not inclined to give a superseding cause instruction to the jury because, on the basis of its reading of . . . *Barry* v. *Quality Steel Products, Inc.*, [263 Conn. 424, 820 A.2d 258 (2003)], superseding cause was no longer part of our tort jurisprudence except in limited circumstances, specifically, cases involving either an intervening intentional tort, act of nature, or criminal event that was unforeseeable to the defendant. The court suggested that the exception was not at issue in the present case because, under the plaintiff's theory of liability, the intervening theft of the car was entirely foreseeable.

"The defendants, however, argued that the court was

focusing on the wrong criminal act. They indicated that it was not necessarily the theft of the taxicab in this case that warranted an instruction on superseding cause but the unforeseeability of the thieves' subsequent criminal conduct, namely, intentionally driving the taxicab up onto a sidewalk to evade responsibility for a rear-end collision and the ensuing criminal assault on the plaintiff. Furthermore, the defendants noted that part of the court's rationale in *Barry* for abandoning the doctrine of superseding cause in cases alleging that an intervening negligent act or acts contributed to a plaintiff's injuries was that apportionment of liability between tortfeasors was permitted, which would prevent a less culpable defendant from inequitably shouldering full responsibility for injuries that resulted from multiple negligent acts. The defendants contended that, unlike *Barry*, this case involved intervening actions of other tortfeasors that were not merely negligent but reckless and criminal. In such a case, the defendants argued, apportionment of liability is unavailable by statute; see General Statutes § 52-572h (o); and, thus, the primary policy rationale underlying the abolishment of the doctrine of superseding cause was absent. The court indicated that it would review the case law and give the issue further consideration in light of these arguments.

"[Subsequently], the court provided counsel with the latest draft of its jury instructions and also with copies of draft interrogatories that the court intended to submit to the jury. The court indicated that the current version of the instructions included a new paragraph that the court had decided to add after further consideration of the case law concerning superseding cause and its discussions with the parties. That paragraph instructed the jury to consider whether the theft of the taxicab and the resulting accident involved intentional acts that were outside the scope of the risk created by Sainval's conduct, and that if the jury found this to be so, then the defendants should not be found responsible for the plaintiff's injuries because the conduct of the two teens would have been the proximate cause of those injuries, thus relieving the defendants of any liability. The court also drafted a new, related interrogatory that asked the jury to state whether the 'accident' that occurred was outside the scope of the risk created by Sainval's act of leaving the keys in the ignition of the taxicab. The court directed the jury to return a verdict for the defendants if the answer to that inquiry was yes.

"Following the close of evidence later that day, the court held a charging conference. At the charging conference, the plaintiff stated that it believed the additional paragraph added by the court to its latest draft instructions was unnecessary and confusing and that, in defining and explaining the concept of proximate cause, the court adequately had covered both foreseeability and whether Sainval's conduct was a substantial factor in causing the plaintiff's injuries. The plaintiff

also stated that she did not think there was any evidence from which the jury could construe that the teens had intentionally sought to harm her. The court suggested that the additional instruction was necessary to comport with case law, referring in particular to *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 971 A.2d 676 (2009). It indicated its belief that foreseeability for purposes of determining negligence and scope of the risk for purposes of applying superseding cause, although closely related, were slightly different concepts.[4] The court agreed that there was nothing in the record to support a finding that the assault on the plaintiff was intentional but noted that the two teens had also engaged in other criminal conduct, including intentionally stealing the taxicab and intentionally fleeing the scene to evade responsibility after striking the plaintiff.

"The defendants noted that, although the court's proposed jury instruction made reference to a special defense, it never identified that defense; in fact, the term 'superseding cause' was never used by the court. The defendants argued that they intended to reference that term in . . . closing arguments and that they were entitled to a separate charge addressing their superseding cause defense. The defendants also took the position that, unlike in criminal law, tort law made no meaningful distinction between reckless and intentional conduct, and, thus, they asserted that it was inconsequential whether the criminal assault on the plaintiff was the result of intentional or reckless conduct for purposes of applying the doctrine of superseding cause.

"On December 11, 2014, prior to closing arguments, the plaintiff requested that the court change the order of the proposed interrogatories. The interrogatory that the court had added regarding scope of the risk, which the court indicated related to the special defense of superseding cause, was, at the time, interrogatory number four. Interrogatory number five at that time asked whether the plaintiff had proven that some or all of her injuries were proximately caused by Sainval. The plaintiff argued that because proximate cause was an element of her prima facie case, it made more sense for the jury to answer that interrogatory and fully establish a prima facie case before turning to any consideration of a special defense. According to the plaintiff, this would also negate the need for a retrial in the event there was a defendants' verdict on the special defense that was overturned later on appeal; all that would be required would be a hearing in damages. The defendants did not agree that a switch was necessary. The court nevertheless indicated that it would most likely make the switch and later incorporated the change in the interrogatories it submitted to the jury. The court also indicated that it had made some additional changes based [on] the positions of the parties at the charging

conference, including referring to the doctrine of super-seding cause by name.

"After the parties concluded their closing arguments, the court read its instructions to the jury. The relevant portions of the court's instructions for purposes of the present appeal are those addressing proximate causation, which provided in relevant part as follows: 'Once you've gotten past factual causation, you need to address proximate cause. Proximate cause means that there must be a sufficient causal connection between the act or omission alleged, and any injury or damage sustained by the plaintiff.

" 'An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing the injury. That is, if the injury or damage was a direct result, or a reasonable and probable consequence of the defendant's act or omission, it was proximately caused by such an act or omission.

" 'In other words, if an act had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause. In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the negligence of the defendant.

" 'If you find that the plaintiff complains about an injury which would have occurred even in the absence of the defendant's conduct, or is not causally connected to this accident, you must find that the defendant did not proximately cause that injury.

" 'Under the definitions I have given you, negligent conduct can be a proximate cause of an injury, if it is not the only cause, or even the most significant cause of the injury, provided it contributes materially to the production of the injury, and thus is a substantial factor in bringing it about.

" 'Therefore, when a defendant's negligence combines together with one or more other causes to produce an injury, such negligence is a proximate cause of the injury if its contribution to the production of the injury, in comparison to all other causes, is material or substantial.

" 'When, however, some other causal causes contributes so powerfully to the production of an injury, as to make the defendant's negligent contribution to the injury merely trivial or inconsequential, the defendant's negligence must be rejected as a proximate cause of the injury, for it has not been a substantial factor in bringing the injury about.[5]

" 'Or to put it another way, if you find that the injury would have been sustained, whether or not the defendant had been negligent, his negligence would not have been a proximate cause of the accident. It is your

responsibility to determine which, if any, of the injuries and damages claimed by the plaintiff were proximately caused by the conduct of the defendant.

" 'The defendants have claimed that the theft and operation of the car by [Johnson] and [Bowden], and the resulting accident, constituted such an event, an event that was so overpowering in consequence as to render any possible negligence on the part of defendant Sainval relatively insignificant, and therefore not a proximate cause of the injuries sustained by plaintiff.

" 'Foreseeability of the car being stolen, something you would have considered in connection with determining whether [Sainval] was negligent, also may be considered in this regard. It is for you to decide whether the theft of the car and subsequent manner of operation [were] so overwhelming in significance, or whether they constituted a concurrent proximate cause but not of sufficient magnitude as to render [Sainval's] negligence inconsequential.

" 'To put it another way, if you find that the theft of the car and subsequent driving of the vehicle and resulting accident were intentional acts that were not within the scope of the risk which was created by [Sainval's] conduct, then the defendant[s] could not be found responsible for the injuries to the plaintiff as the conduct of [Johnson] and [Bowden] would have been the proximate cause of the injuries sustained by the plaintiff, thereby relieving the defendant[s] of any liability.

" 'To the extent that you find that the plaintiff has proven, by a preponderance of the evidence, that the negligence of defendant Sainval was a proximate cause of any or all of the injuries and damages claimed to have been sustained by the plaintiff, as I have defined proximate cause to you, you are to proceed to determine the issues as to the amount of damages, following the rules I'm about to give you.'

"Following the jury charge, the court inquired whether the parties had any additional objections to the charge other than those raised at the charge conference. Neither party raised any additional objections. A written copy of the court's charge was made an exhibit and provided to the jury.

"The following day, the jury returned a verdict in favor of the defendants. The relevant interrogatories submitted to the jury, and the jury's response[s], are as follows: '1. Did [the] plaintiff . . . prove, by a preponderance of the evidence, that . . . Sainval failed to exercise reasonable care when he left the keys to his taxicab in the vehicle, when he went inside the apartment complex at Monterey Village on the evening of December 3, 2009? [Answer] Yes . . . [If the answer is 'YES,' go to interrogatory #2; if the answer is 'NO,' sign and date this form and the defendants' verdict form, and then report that you have reached a verdict.]

2. Did [the] plaintiff prove that it was reasonably foreseeable that a motor vehicle, left in a parking area of Monterey Village with the key in the ignition on the evening of December 3, 2009, might be stolen? [Answer] Yes . . . [If the answer is 'YES,' go to interrogatory #3; if the answer is 'NO,' sign and date this form and the defendants' verdict form, and then report that you have reached a verdict.] 3. Did [the] plaintiff prove that it was reasonably foreseeable that if a motor vehicle were to be stolen from the parking area at Monterey Village, it might be in an accident, causing injury? [Answer] Yes . . . [If the answer is 'YES,' go to interrogatory #4; if the answer is 'NO,' sign and date this form and the defendants' verdict form, and then report that you have reached a verdict.] 4. Did [the] plaintiff . . . prove that some or all of the injuries she sustained on the evening of December 3, 2009, were proximately caused by the negligence of . . . Sainval? [Answer] Yes . . . [If the answer is 'YES,' go to interrogatory #5; if the answer is 'NO,' sign and date this form and the defendants' verdict form, and then report that you have reached a verdict.] 5. Did [the] defendant[s] prove that the accident that occurred on December 3, 2009 was outside the scope of risk created by [Sainval's] leaving his key in the ignition of a car parked at Monterey Village? [Answer] Yes . . . .'[6] The directions contained in the interrogatories instructed the jury to return a defendants' verdict if it answered interrogatory five in the affirmative, and, therefore, the jury did not respond to the remainder of the interrogatories submitted. The court accepted the jury's verdict.

"The plaintiff filed a postjudgment motion asking the court to set aside the verdict and to order a new trial. The plaintiff argued that, despite the jury having found that the theft of the taxicab and the subsequent accident resulting in injuries were foreseeable and that Sainval's actions were a proximate cause of her injuries, the jury instructions and attendant interrogatories permitted the jury to simultaneously and inconsistently find that her being struck by the taxicab in the manner that occurred nevertheless was outside the scope of the risk created by Sainval's negligence.

"The court issued a detailed and thorough memorandum of decision denying the plaintiff's motion. The court found that there was no basis for concluding that it should not have submitted the doctrine of superseding cause to the jury in this case or that the resulting verdict and interrogatories were fatally inconsistent. The court explained that it saw 'nothing inherently inconsistent with a jury finding a "standard" proximate cause instruction satisfied, while also later finding superseding cause established when viewed from the [alternative] perspective of a charge on that point.' '' (Footnotes added; footnotes omitted.) *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 46–54.

On appeal to the Appellate Court, the plaintiff claimed that the doctrine of superseding cause should not have been submitted to the jury because it applies only to superseding acts that were unforeseeable and intended to cause harm, and Bowden's reckless operation of the taxicab satisfied neither of those requirements. Id., 54–55. The plaintiff also argued that, even if the superseding cause doctrine were applicable, the trial court's instructions misled the jury by failing to adequately define the phrase "scope of the risk" in the context of determining whether Bowden's actions were a superseding cause of the plaintiff's injuries. Id., 68–70. Finally, the plaintiff maintained that the trial court improperly had denied her motion to set aside the verdict and for a new trial on the ground that the jury's finding of a superseding cause was irreconcilable with its finding that Sainval's negligence was the proximate cause of some or all of the plaintiff's injuries. Id., 71–73.

The Appellate Court rejected the plaintiff's claims. Id., 41–42. With respect to her contention that the doctrine of superseding cause applies only to intervening acts that were intended to cause harm, the Appellate Court explained that when this court abolished the superseding cause doctrine in cases involving intervening acts of negligence, it expressly exempted from its holding, among other types of intervening forces, unforeseeable "criminal event[s]"; *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16; a category that, in the view of the Appellate Court, included the actions of Bowden and Johnson. *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 64–65. With respect to the plaintiff's claim that the doctrine should not have been submitted to the jury because it applies only to superseding acts that were unforeseeable, and Bowden's recklessness represented the kind of risk that made Sainval's conduct negligent in the first place, the Appellate Court responded that, "even in cases in which the risk of a third party's intervention is a generally foreseeable consequence of a defendant's actions, it is a question of fact whether the third party's intervening actions fall somewhere within the hazard created by the defendant's negligence, i.e., within the scope of the risk. Only if the answer to that question is so abundantly clear as to be determinable as a matter of law should the court decline to give an instruction on superseding cause. Otherwise, the inquiry is a factual issue that should be presented to and decided by a jury." Id., 61.

The Appellate Court also rejected the plaintiff's contention that the trial court's instructions on superseding cause were so misleading as to necessitate a new trial; id., 68; concluding that, "although perhaps not perfect in all respects, the instructions were sufficient to inform the jury of the doctrine of superseding cause as pleaded and to guide the jury through its deliberation to a proper verdict." Id., 71. Finally, the Appellate Court disagreed

with the plaintiff that the trial court improperly denied her motion to set aside the verdict and for a new trial on the ground that the jury's response to the fourth interrogatory, that is, that some or all of the plaintiff's injuries were proximately caused by Sainval's negligence, was irreconcilable with its response to the fifth interrogatory, that is, that the accident that occurred was outside the scope of risk created by Sainval's negligence. Id., 71–73. In reaching its determination, the Appellate Court relied on the definition of superseding cause set forth in § 440 of the Restatement (Second) of Torts, which "defines a superseding cause as 'an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another *which his antecedent negligence is a substantial factor in bringing about.*' . . . 2 Restatement (Second), Torts § 440, p. 465 (1965)." (Emphasis in original.) *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 58.

The Appellate Court also relied on § 442 B of the Restatement (Second) of Torts; id., 59–61; which states that, "[if] the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, *except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.*" (Emphasis added.) 2 Restatement (Second), supra, § 442 B, p. 469. Reading §§ 440 and 442 B together, the Appellate Court reasoned that, because the test for proximate cause is whether the defendant's conduct was "a substantial factor" in producing the plaintiff's injury; (internal quotation marks omitted) *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 329, 107 A.3d 381 (2015); the jury properly could have found both that Sainval's negligence was a proximate cause of the plaintiff's injuries, that is, it was a substantial factor in producing them, and that the accident that occurred was outside the scope of the risk created by Sainval's negligence. *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 61; see id. ("even in cases in which the risk of a third party's intervention is a generally foreseeable consequence of a defendant's actions, it is a question of fact whether the third party's intervening actions fall somewhere within the hazard created by the defendant's negligence, i.e., within the scope of the risk").

In reaching its determination, the Appellate Court recognized the inherent tension between the Restatement's definition of superseding cause, which this court has never formally adopted,[7] and our statement in *Barry* that, "[i]f a third person's [negligence] is found to be the superseding cause of the plaintiff's injuries, that [negligence], rather than the negligence of the party attempting to invoke the doctrine of superseding cause, *is said to be the sole proximate cause of the injury.*"

(Emphasis added; internal quotation marks omitted.) Id., 58–59 and n.15, quoting *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 434–35. The Appellate Court reasoned, however, that, because "[c]omment (b) of § 440 of the Restatement (Second) of Torts clarifies that '[a] superseding cause relieves the actor of liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm' "; (emphasis omitted) *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn App. 59 n.15; it was reasonable to construe the "sole proximate cause" language in *Barry* "not as a repudiation of the Restatement's broader definition but simply as a recognition that, in some cases involving a superseding cause, the superseding event may so diminish the impact of the initial negligence of the defendant that that negligence can no longer be viewed as a substantial factor in bringing about the plaintiff's injury, thus transforming the superseding cause into the sole proximate cause of the harm. This iteration of the doctrine, however, does not expressly preclude that, in certain cases factually distinct from that considered by the court in *Barry*, the impact of the defendant's initial negligence will not be so diminished by the later intervening act as to fully negate the initial negligence as a substantial factor in causing the harm at issue. In such cases, application of the doctrine of superseding cause may nonetheless be justified to prevent an otherwise inequitable determination regarding liability." Id.

On appeal following our grant of certification, the plaintiff contends that the Appellate Court incorrectly held that the doctrine of superseding cause applies to criminally reckless conduct. In support of this contention, the plaintiff asserts that the Appellate Court's determination conflicts with § 442 B of the Restatement (Second) of Torts, which this court has adopted, and with the Judicial Branch's model civil jury instruction on superseding causes; Connecticut Civil Jury Instructions 3.1-5, available at http://www.jud.ct.gov/JI/Civil/Civil.pdf (last visited August 5, 2019);[8] both of which, the plaintiff maintains, indicate that, for a third party's condut to qualify as a superseding cause, he or she must have acted with the specific intent to cause injury. The plaintiff further contends that the Appellate Court incorrectly determined that the trial court properly denied the plaintiff's motion to set aside the verdict and for a new trial on the basis of its determination that an intervening force can be foreseeable for purposes of determining proximate cause but not within the scope of the risk for purposes of applying the superseding cause doctrine. The plaintiff argues that, under this state's well established precedent—precedent on which the trial court's jury instructions were predicated—if Sainval's negligence proximately caused some or all of the plaintiff's injuries, then the accident was, by definition, within the scope of the risk created by his

negligence. See, e.g., *Sapko* v. *State*, 305 Conn. 360, 373, 44 A.3d 827 (2012) ("[t]he fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct" [internal quotation marks omitted]).

The defendants counter that the Appellate Court correctly determined that the jury's interrogatory responses can be reconciled by applying §§ 440 and 442 B of the Restatement (Second) of Torts, pursuant to which the jury reasonably could have found that Sainval's negligence proximately caused the plaintiff's injuries *and* that Bowden's and Johnson's actions were a superseding cause of the accident. The defendants further argue that, because superseding cause is a special defense that admits the allegations of a complaint but seeks to establish that the plaintiff cannot prevail; see *Coughlin* v. *Anderson*, 270 Conn. 487, 501, 853 A.2d 460 (2004) ("[a]s a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action" [internal quotation marks omitted]); it makes sense that "a jury must first determine that a defendant's negligence is a proximate cause of a plaintiff's injuries before it can consider whether a superseding cause . . . intervened to absolve that negligent defendant of liability for those injuries." For the reasons set forth hereinafter, we conclude, contrary to the contention of the plaintiff, that the superseding cause doctrine is applicable to the present case. We also conclude, however, that the plaintiff is entitled to a new trial because the interrogatory responses on which the jury verdict was based are inconsistent as a matter of law.

I

Whether the superseding cause doctrine applies to criminally reckless conduct presents a question of law, over which we exercise plenary review. See, e.g., *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 433–46 (reviewing de novo trial court's decision regarding applicability of superseding cause doctrine). To properly analyze this question, it is necessary to review the legal underpinnings of the doctrine. As both the trial court and the Appellate Court observed, few other areas of tort law have consistently proven as challenging for courts to explain and for juries to apply as the principles underlying the doctrines of proximate cause and superseding cause. See, e.g., *Cuneo* v. *Connecticut Co.*, 124 Conn. 647, 651–52, 2 A.2d 220 (1938) ("Few subjects have caused more trouble to courts and legal philosophers than [the question of proximate cause]. The cases on the subject are innumerable and the discussions interminable."); *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 56 ("although the concepts underlying the doctrine of superseding cause may be easy to

identify, their application to the specifics of a particular case can be a far more difficult task"). It is well settled that a negligence action consists of four elements: duty, breach, causation, and actual injury. See, e.g., *Murdock* v. *Croughwell*, 268 Conn. 559, 566, 848 A.2d 363 (2004) (identifying essential elements of negligence action). For purposes of this appeal, the defendants do not dispute that Sainval owed a duty to the plaintiff, that he breached that duty, and that the plaintiff was seriously injured. They do dispute, however, that Sainval's negligence caused the plaintiff's injuries.[9] Causation in a negligence action has two components, both of which must be satisfied for the plaintiff to prevail. The first, "[c]ause in fact, occasionally referred to as actual cause, asks whether the defendant's conduct 'caused' the plaintiff's injury. Thus, if the plaintiff's injury would not have occurred 'but for' the defendant's conduct, then the defendant's conduct is a cause in fact of the plaintiff's injury. Conversely, if the plaintiff's injury would have occurred regardless of the defendant's conduct, then the defendant's conduct was not a cause in fact of the plaintiff's injury. [W. Keeton et al., Prosser and Keeton on the Law of Torts] (5th Ed. 1984) § 41, p. 266." *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 605, 662 A.2d 753 (1995). In the present case, it is undisputed that Sainval's conduct was a cause in fact of the plaintiff's injuries because, if he had not left the taxicab unattended with the key in the ignition, the vehicle would not have been stolen and the plaintiff would not have been injured.

The second component of causation is proximate cause. "Philosophically, cause in fact is limitless; but for the creation of this world, no crime or injury would ever have occurred. [W. Keeton, supra, § 41] p. 264. The philosophical sense of causation includes the great number of events without which any happening [of an injury] would not have occurred . . . yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes. 2 Restatement (Second), [supra] § 431, comment (a) [p. 429]." (Internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 605. "Because actual causation . . . is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The test for proximate cause is whether the defendant's conduct was a substantial factor in producing the plaintiff's injury. . . . This substantial factor test reflects the inquiry fundamental to all proximate cause questions, namely, whether the harm [that] occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citation omitted; internal quotation marks omitted.) *Ruiz* v. *Victory Properties*, LLC, supra, 315 Conn. 329.

We often have observed that "[p]roximate cause

results from a sequence of events unbroken by a super-seding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force. . . . The terms 'intervening cause' and 'superseding cause' have been used inter-changeably. . . . The Restatement [Second] of Torts makes clear that the doctrine is properly referred to as 'superseding cause,' and that it embodies within it the concept of an 'intervening force.' 2 Restatement (Second), [supra] §§ 440 through 453 [pp. 465–91]." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 178–79, 700 A.2d 38 (1997). As we also have explained pre-viously, "[c]auses traced clear to the end [that] become of trivial consequences, mere incidents of the operating cause, may be, in a sense, factors, but are so insignifi-cant that the law cannot fasten responsibility [on] one who may have set them in motion. They are not substan-tial factors as operative causes. To be factors of this degree they must have continued down to the moment of the damage, or, at least, down to the setting in motion of the final active injurious force [that] immediately produced (or preceded) the damage." (Internal quota-tion marks omitted.) *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 411 953 A.2d 28 (2008); see also *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 25, 734 A.2d 85 (1999) ("[r]emote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes" [internal quo-tation marks omitted]).

Thus, "[p]roximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff. . . . Proximate cause serves to [temper] the expansive view of causa-tion [in fact] . . . by the pragmatic . . . shaping [of] rules [that] are feasible to administer, and yield a work-able degree of certainty." (Citation omitted; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 606.

"[A]lthough nearly every treatise involving the law of torts acknowledges the existence of the doctrine of superseding cause, it is defined differently by various scholars. For example, one treatise notes that the prob-lem of superseding cause is not primarily one of causa-tion but, rather, 'one of policy as to imposing legal responsibility.' [W. Keeton, supra] § 44, p. 301. . . . [O]ther treatises support the view that the doctrine of superseding cause is merely a more complicated analy-sis of whether the defendant's actions were the proxi-mate cause of the plaintiff's injuries. For example, one treatise states: '[Superseding] cause is merely proxi-mate cause flowing from a source not connected with the party sought to be charged. While the term may have some descriptive value, unduly elaborate discussion of

[superseding] cause as such tends to becloud rather than clarify the relatively simple idea of causal connection. When it is determined that a defendant is relieved of liability by reason of [a superseding] cause, it would appear to mean simply that the negligent conduct of someone else—and not that of the defendant—is the proximate cause of the event.' . . . 1 T. Shearman & A. Redfield, Negligence (Rev. Ed. 1941) § 37, pp. 99–100." (Emphasis omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439–40.

Accordingly, "[i]f the third person's negligence is determined to be a superseding cause of the plaintiff's injury, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury. . . . The circumstances under which this shifting may take place have been well-defined in our case law. Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury; or it must be the non-concurring culpable act of a human being who is legally responsible for such act. . . . If a defendant's negligence was a substantial factor in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them. . . . Whether a superseding cause was of such a character as to prevent an act of negligence of the defendant from being a substantial factor in producing a plaintiff's injury is ordinarily a question of fact [for the jury]." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 179–80.

In *Barry*, this court determined that the doctrine of superseding cause had outlived its usefulness in cases in which "a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries." *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 436. *Barry* was decided after the legislature's enactment of No. 86-338 of the 1986 Public Acts (Tort Reform I) and No. 87-227 of the 1987 Public Acts (Tort Reform II), prior to which "this state followed the rules of joint and several liability with no contribution among joint tortfeasors. [Under that system, if] the illegal conduct of each of the defendants was a proximate cause of [an injury], they would be liable jointly and severally, the plaintiff would have a right to recover the entire amount of damages awarded from either, and, if he did so, the defendant paying them would have no right of contribution against the other [defendants] . . . .

"Under the common law of joint and several liability, therefore, even a defendant whose degree of fault was

comparatively small could be held responsible for the entire amount of damages, [as] long as his negligence was a proximate cause of the plaintiff's injuries. Thus, the plaintiff could collect the entire amount of his judgment from the richest defendant, or from the defendant with the deepest pocket. . . .

"In response largely to these concerns, the legislature undertook to reform the tort recovery provisions of our civil system, by enacting [Tort Reform I], which took effect October 1, 1986. Tort Reform I replaced the common-law rule of joint and several liability with a system of apportioned liability, holding each defendant liable for only his or her proportionate share of damages." (Citations omitted; internal quotation marks omitted.) *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 729–30, 778 A.2d 899 (2001).

Prior to *Barry*, the superseding cause doctrine was applied to any intervening force—be it of nature, man or beast—that a defendant claimed had superseded his own tortious conduct to such a degree that it alone was the sole proximate cause of the plaintiff's injuries. See, e.g., *Lombardi* v. *Wallad*, 98 Conn. 510, 518, 120 A. 291 (1923) ("the intervening cause either must be a cause, whether intelligent or not, [that] so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury"); *Mahoney* v. *Beatman*, 110 Conn. 184, 205, 147 A. 762 (1929) (*Maltbie, J.*, dissenting) ("the circumstances [that] intervene may be natural phenomena, or the involuntary and unlawful act of a third person, or his negligent conduct, or his voluntary but lawful act, or his voluntary and wilfully wrong act; or some act of the injured party himself may intervene and it may be a negligent act on his part or a wilfully wrong act").

In light of the significant changes to our tort system implemented by tort reform, however, this court determined in *Barry* "that the doctrine of superseding cause no longer serves a useful purpose in our jurisprudence when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries. [In such] circumstances, superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis. . . . [B]ecause our statutes allow for apportionment among negligent defendants; see General Statutes § 52-572h; and because Connecticut is a comparative negligence jurisdiction; General Statutes § 52-572o; the simpler and less confusing approach to cases . . . [in which] the jury must determine which, among many, causes contributed to the [plaintiff's] injury, is to couch the analysis in proximate cause rather than allowing the defendants to raise a defense of superseding cause." (Footnote omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 436–39; see also id., 443 n.18 ("[T]he doctrine

of superseding cause is already incorporated into the test for proximate cause. Repeating the test for superseding cause, then, merely adds confusion to an already confusing subject, and serves no meaningful purpose in a jurisdiction, such as ours, [in which] a defendant will be liable only for his or her proportion of the plaintiff's damages.")

Under this approach, "the fact finder need only determine whether the allegedly negligent conduct of any actor was a proximate cause, specifically, whether the conduct was a substantial factor in contributing to the plaintiff's injuries. If such conduct is found to be a proximate cause of the plaintiff's foreseeable injury, each actor will pay his or her proportionate share pursuant to our apportionment statute, regardless of whether another's conduct also contributed to the plaintiff's injury. Put differently, the term superseding cause merely describes more fully the concept of proximate cause when there is more than one alleged act of negligence, and is not functionally distinct from the determination of whether an act is a proximate cause of the injury suffered by the plaintiff." Id., 440.

In reaching our determination in *Barry*, we expressly limited our holding to cases in which "a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence," stating that our decision did "not necessarily affect those cases [in which] the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." Id., 439 n.16. Later, we made clear that our holding in *Barry* did not affect those types of cases. E.g., *Sapko* v. *State*, supra, 305 Conn. 377 ("the superseding cause doctrine was largely abandoned in *Barry* in favor of comparative and contributory negligence . . . subject . . . to certain narrow exceptions, namely, situations in which an unforeseeable intentional tort, force of nature or criminal event supersedes the defendant's tortious conduct" [citation omitted; internal quotation marks omitted]); *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 292 Conn. 167 (*Barry* "specifically limited our abolishment of the doctrine to the situation in cases . . . [in which] a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence" [internal quotation marks omitted]).

Although we did not expressly say so at the time, we exempted unforeseeable intentional torts, forces of nature and criminal events from our holding in *Barry* because, even under our modern tort system, apportionment of liability is not available between parties liable for negligence and parties liable on any other basis. See General Statutes § 52-572h (o) ("there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis

other than negligence including, but not limited to, intentional, wanton or reckless misconduct"); *Sapko* v. *State*, supra, 305 Conn. 377 (*Barry* "abrogated the superseding cause doctrine for negligence cases only because, in those cases, a jury is tasked with apportioning liability in accordance with our comparative fault and apportionment statutes"); *Sapko* v. *State*, supra, 378 ("we abrogated the superseding cause doctrine in *Barry* not because the concept of superseding cause is inherently incompatible with our proximate cause jurisprudence but out of concern that a separate instruction concerning the doctrine might confuse jurors by causing them to ignore or discount the comparative fault and apportionment principles underlying §§ 52-572h and 52-572o"). In *Sapko*, we expanded the exceptions enumerated in *Barry* to include certain workers' compensation cases in which apportionment is unavailable and an employer claims that an intervening force—in that case, an employee's accidental overdose on prescription pain medicine—broke the chain of proximate causation between an employee's compensable work injury and his death.[10] Id., 364–65, 386; see id., 377 ("[W]e simply did not consider [in *Barry*] whether the doctrine should be abolished in workers' compensation cases. Upon consideration of that question in the present case, we agree with the [Compensation Review Board] that the concerns that caused us to abrogate the doctrine in *Barry* simply are not implicated in our workers' compensation scheme, which, in contrast to our comparative negligence tort scheme, is a no-fault compensation system that imposes a form of strict liability on employers.").

In light of the foregoing, the plaintiff cannot prevail on her claim that the doctrine of superseding cause applies only to intervening acts that were intended to cause harm. As our discussion of the relevant case law makes clear, the superseding cause doctrine has been applied historically to any independent, intervening force that a defendant claims was the sole proximate cause of a plaintiff's injury. Following tort reform, this court prohibited the use of the doctrine in cases in which apportionment of liability is available, not because it was incompatible with the causation principles applicable to such cases; see *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 443 n.18 ("the doctrine of superseding cause is already incorporated into the test for proximate cause"); but because we deemed it unnecessary in light of the statutory apportionment scheme adopted some fifteen years earlier. See id. ("[r]epeating the test for superseding cause . . . merely adds confusion to an already confusing subject, and serves no meaningful purpose in a jurisdiction, such as ours, wherein a defendant will be liable only for his or her proportion of the plaintiff's damages"). As we have explained, because apportionment was unavailable prior to tort reform, ameliorative principles such

as the superseding cause doctrine were developed to mitigate the harshness of a tort system that would hold a defendant liable for all of a plaintiff's damages even though his or her degree of fault may have been relatively small in comparison to other defendants. See id., 441 (superseding cause doctrine "was . . . shaped in response to the harshness of contributory negligence and joint and several liability").

When applicable, the doctrine merely allows a defendant to argue, and to have the jury instructed, that it is the defendant's position that some other actor is the sole legal cause of the plaintiff's injury such that, even though the defendant's conduct may have been a cause in fact of the injury in a "but for" sense, its conduct did not contribute to the production of the injury in any meaningful sense—that is, the defendant's conduct was not a substantial factor in producing the injury and, thus, it was not a proximate cause of that injury. Furthermore, under our precedent, to say that the defendant's conduct was not a substantial factor in producing an injury is simply another way of saying that the injury was not within the scope of the risk created by the defendant's conduct.[11] E.g., *Sapko* v. *State*, supra, 305 Conn. 373 (" '[t]he fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct' "). We agree with the Appellate Court that, as long as apportionment of liability is unavailable in cases in which a defendant claims that an intervening force is the sole legal cause of the plaintiff's injuries, the doctrine of superseding cause will continue to play a legitimate ameliorative role in our tort system.[12] In such cases, a request to charge on the doctrine "that is relevant to the issues in [the] case and . . . accurately states the applicable law must be honored . . . ." (Internal quotation marks omitted.) *State* v. *Devalda*, 306 Conn. 494, 506, 50 A.3d 882 (2012).

The plaintiff asserts, nonetheless, that our conclusion that the doctrine retains vitality in such cases is inconsonant with our past adoption of the negligence principles contained in § 442 B of the Restatement (Second) of Torts, which, as we previously indicated, states that, "[if] the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." 2 Restatement (Second), supra, § 442 B, p. 469. Specifically, the plaintiff argues that, "under § 442 B, in order for another force to relieve the defendant of liability, that force must be both (1) intentionally caused by a third person and (2) not within the scope of the risk." To be sure, this court has applied § 442 B in cases in which a defendant has claimed that his

or her negligence was superseded by the intentionally harmful acts of a third party. In all of the cases in which we have applied § 442 B, however, we relied on it solely for the proposition that the plaintiff could still prevail if he or she were able to establish that the intentionally harmful act was within the scope of the risk created by the defendant's negligence. See, e.g., S*tewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 608 ("the plaintiff must show, by a fair preponderance of the evidence, that harm intentionally caused by a third person is within the scope of the risk created by the defendant's negligent conduct"); *Doe* v. *Manheimer*, 212 Conn. 748, 759–60, 563 A.2d 699 (1989) (same), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995); *Tetro* v. *Stratford*, 189 Conn. 601, 605–606, 458 A.2d 5 (1983) ("[our cases applying § 442 B] make it clear that the [intervening acts] of [a third party do] not [necessarily] relieve the [defendant] of liability because the trier of fact may find that the plaintiff's injury falls within the scope of the risk created by [the defendant's] negligent conduct"). As the Appellate Court explained in rejecting the plaintiff's argument predicated on § 442 B, however, "[none of these cases supports] the proposition that a superseding cause 'can only exist' in the face of conduct by a third party intended to cause harm . . . [because none of them] considered or held that a specific intent to cause harm is a necessary prerequisite to raising the doctrine of superseding cause. The cases merely recited the standard contained in § 442 B of the Restatement (Second) of Torts."[13] *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 65–66.

We note, moreover, that, although § 442 B is the Restatement section most often cited in cases involving intentionally harmful intervening acts, it does not itself govern when such acts constitute superseding causes. Sections 302 B,[14] 448[15] and 449[16] of the Restatement (Second) do. Comment (a) to § 442 B provides that the "rule stated in this [s]ection is a special application of the principle stated in § 435 (1),[17] [namely] that the fact that the actor neither foresaw nor could have foreseen the manner in which a particular harm is brought about does not prevent his liability where the other conditions necessary to it exist." (Footnote added.) 2 Restatement (Second), supra, § 442 B, comment (a), p. 469. Comment (c) to § 442 B, however, provides that "[t]he rule stated in this [s]ection *does not apply* where the harm of which the risk has been created or increased by the actor's conduct is brought about by the intervening act of a third person which is intentionally tortious or criminal, and is not within the scope of the risk created by the original negligence. Such tortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk, in which case the actor may still be liable for the harm, *under the rules stated in §§ 448 and 449*." (Emphasis added.) Id., comment (c), p. 471.

Thus, contrary to the plaintiff's contentions, § 442 B establishes that a defendant is liable "if the plaintiff's harm results from a hazard because of which the defendant's conduct was negligent"; *Cuneo* v. *Connecticut Co.*, supra, 124 Conn. 651; even if the harm is brought about through the intervention of a third party. As the commentary to § 442 B makes clear, however, this principle is merely an extension of the rule contained in § 435 (1) of the Restatement (Second) of Torts, namely, that, as long as the defendant's conduct was a substantial factor in producing the harm, the fact that the defendant neither foresaw nor could have foreseen the extent of the harm, or the manner in which it occurred, does not prevent him from being liable.[18] 2 Restatement (Second), supra, § 442 B, comment (a), p. 469; see also *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 333, 430 A.2d 1 (1980) ("[as] long as harm of the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizarre or unforeseeable"); see also *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 587, 717 A.2d 215 (1998) (*Berdon, J.*, dissenting) (focus of foreseeability inquiry should be "on the general nature of the harm and not the specific manner in which the injury occurred or the conduct of a third party"). As the commentary also makes clear, however, the manner in which a particular harm occurred matters greatly when the harm results from the intentionally harmful act of a third party. In those circumstances, under the rules set forth in §§ 302 B, 448 and 449 of the Restatement (Second), the defendant will be liable only if the risk created by the defendant's negligence included the hazard that the defendant's conduct would induce a third party to commit such an act.[19]

Finally, although §§ 302 B, 448 and 449 of the Restatement (Second) delineate when a defendant may be liable for a third party's intentionally harmful acts, those sections merely reiterate the principle set forth in §§ 442 B and 435 (1), which is the same principle that governs every section of the Restatement (Second) of Torts relating to proximate causation: liability will attach if the defendant knew or should have known that his conduct created or increased the risk that the third party would act in such a manner. See, e.g., *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 190–91 n.37, 72 A.3d 929 (2013) ("[Section] 302 B of the Restatement (Second) of Torts does not establish a foreseeability standard that is . . . different from the standard of foreseeability applicable to [other] general negligence claims. That standard does not differ from negligence case to negligence case, and there is no difference in the nature of that test for purposes of a general negligence claim, on the one hand, and a claim under § 302 B, on the other. . . . Like all negligence claims, § 302 B is predicated on the same general principles that govern other negligence actions, with liability

in such cases depending on the foreseeability of the third party's criminal misconduct." [Internal quotation marks omitted.]).

We also disagree with the plaintiff that the Judicial Branch's model civil jury instructions on superseding cause support the conclusion that the doctrine applies only to acts that were intended to cause harm. As the Appellate Court stated in rejecting this contention, "[t]he model instructions are not intended to be authoritative. As provided on their title page, the model instructions are only meant to provide guidance; their legal sufficiency is not guaranteed. See Connecticut Civil Jury Instructions [supra] ('This collection of Civil Jury Instructions is intended as a guide for judges and attorneys in constructing charges and requests to charge. The use of these instructions is entirely discretionary and their publication by the Judicial Branch is not a guarantee of their legal sufficiency.' . . .) Rather than adhering to any particular format, jury instructions must be appropriately tailored to reflect the circumstances of the particular case and to adequately guide the jury. See *Sullivan* v. *Norwalk*, 28 Conn. App. 449, 457, 612 A.2d 114 (1992). The language used in the model jury instructions, although instructive in considering the adequacy of a jury instruction; see *State* v. *Sanchez*, 84 Conn. App. 583, 592 n.10, 854 A.2d 778, cert. denied, 271 Conn. 929, 859 A.2d 585 (2004); is not binding on this court." (Emphasis omitted.) *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 66–67.

We note, moreover, that the model jury instructions on superseding cause found on the Judicial Branch website are revised only to 2008 and, consequently, do not reflect our subsequent cases clarifying that the superseding cause doctrine remains a viable defense in any case in which apportionment is unavailable, and that even an act of negligence can constitute a superseding cause in such a case. It is for reasons like these that we previously have cautioned that the civil jury instructions found on the Judicial Branch website are intended as a guide only, and that their publication is no guarantee of their adequacy. See, e.g., *State* v. *Reyes*, 325 Conn. 815, 821–22 n.3, 160 A.3d 323 (2017) ("The Judicial Branch website expressly cautions that the jury instructions contained therein '[are] intended as a guide for judges and attorneys in constructing charges and requests to charge. The use of these instructions is entirely discretionary and their publication by the Judicial Branch is not a guarantee of their legal sufficiency.' " [Emphasis omitted.]) We therefore reiterate that litigants and trial courts alike should review the relevant case law when fashioning a jury charge, whether on the basis of the instructions set forth on the Judicial Branch website or otherwise, to ensure that it conforms to any recent changes in the law.

II

Having concluded that the Appellate Court correctly determined that the doctrine of superseding cause applies to criminally reckless conduct, we now must consider whether that court also was correct in concluding that the jury's responses to the fourth and fifth interrogatories are legally consistent and, therefore, that the trial court properly denied the plaintiff's motion to set aside the verdict and for a new trial. Although we ordinarily review the denial of a motion to set aside a verdict under an abuse of discretion standard; e.g., *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 303, 852 A.2d 703 (2004); our review is plenary when, as in the present case, the trial court's decision turned on a question of law. *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 250–51 and n.9, 9 A.3d 364 (2010). Furthermore, it is axiomatic that, when a party claims that the verdict should have been set aside due to the jury's inconsistent answers to interrogatories, "the court has the duty to attempt to harmonize the answers." *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987).

As we previously indicated, in concluding that the jury's interrogatory responses were reconcilable, the Appellate Court relied primarily on §§ 440 and 442 B of the Restatement (Second) of Torts, which it interpreted as establishing that an injury could be proximately caused by an actor's negligent conduct but not be within the scope of the risk created by that conduct. Although the Appellate Court acknowledged that its interpretation of these provisions of the Restatement (Second) was at odds with this court's statement in *Barry* that "superseding cause" is simply another way of saying "sole proximate cause," the court ultimately concluded that the "sole proximate cause" language in *Barry* was not intended "as a repudiation of the Restatement's broader definition" of the term and that *Barry's* "iteration of the doctrine . . . does not expressly preclude that in certain cases factually distinct from that considered by the court in *Barry*, the impact of the defendant's initial negligence will not be so diminished by the later intervening act as to fully negate the initial negligence as a substantial factor in causing the harm at issue." *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. 59 n.15.

We do not disagree with the Appellate Court that the fundamental policy underlying the superseding cause doctrine is essentially the same under the Restatement's explication of the doctrine and under the exposition of the doctrine found in the governing precedent of this court. As we explained, however, the terminology employed by the Restatement (Second) and by this court in explaining the doctrine are materially different. In particular, under the Restatement (Second), negligent conduct that is *found to be a proximate cause of the injuries sustained* may nevertheless be rendered so relatively inconsequential in light of a later superseding

cause that that superseding cause is deemed to relieve the original tortfeasor of liability. Under our precedent, by contrast, a finding that conduct constitutes a superseding cause renders the original negligence so insignificant in relation to that superseding cause that the original negligence cannot be deemed to be a proximate cause of the injuries. Thus, our precedent simply does not contemplate a situation in which the original negligence may be found to be a substantial factor in producing the injuries if there is a finding of a superseding cause. Indeed, we consistently have described a superseding cause as an intervening force that "*prevent*[*s*] *an act of negligence of the defendant from being a substantial factor in producing a plaintiff's injury* . . . ." (Emphasis added; internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 335, 813 A.2d 1003 (2003); see also *Virelli* v. *Benhattie, Inc.*, 146 Conn. 203, 209, 148 A.2d 760 (1959) ("the determination whether negligence of [a third party] was such a superseding cause *as to prevent the antecedent negligence of the defendant from being a substantial factor in producing the plaintiff's injuries* was essential to a finding [of superseding cause]" [emphasis added]); *Colligan* v. *Reilly*, 129 Conn. 26, 30, 26 A.2d 231 (1942) (same). Accordingly, we consistently have held that, "[i]f a defendant's negligence was a substantial factor . . . in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them." (Emphasis omitted; internal quotation marks omitted.) *Craig* v. *Driscoll*, supra, 335; accord *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 180.

Although, as the Appellate Court noted, the trial court's jury instructions were imperfect, the jury nevertheless was instructed in accordance with this court's precedent on the doctrine of superseding cause. Thus, the jury was *not* instructed that it could find that Sainval's negligence was a substantial factor in producing the plaintiff's injuries *and* that Bowden's and Johnson's actions were a superseding cause of the injuries. To the contrary, the jury was instructed that only if it found that Sainval's negligence was *not* a substantial factor in producing the plaintiff's injuries could it find that Bowden's and Johnson's actions were a superseding cause of those injuries. See *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270–71, 698 A.2d 838 (1997) ("[w]hen a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent . . . we do not read the interrogatories in isolation, but, rather, in conjunction with the jury instructions" [citation omitted; footnote omitted; internal quotation marks omitted]); *Norrie* v. *Heil Co.*, supra, 203 Conn. 605 ("interrogatories are not vacuous words, but words which are amplified and defined in the charge"). Specifically, the trial court informed the jury that the "defendants have claimed that the theft and operation of the

car by [Johnson] and [Bowden], and the resulting accident, constituted . . . an event . . . that was so overpowering in consequence as to render any possible negligence on the part of . . . Sainval relatively insignificant, *and therefore not a proximate cause of the injuries sustained by the plaintiff.*" (Emphasis added.) The court further explained that, "[w]hen . . . some other causal causes [contribute] so powerfully to the production of an injury as to make the defendant's negligent contribution to the injury merely trivial or inconsequential, *the defendant's negligence must be rejected as a proximate cause of the injury, for it has not been a substantial factor in bringing the injury about.*" (Emphasis added.)

To reinforce the latter point, the court explained that a finding of superseding cause "*precludes a finding that the defendant's conduct was a proximate cause of the plaintiff's injuries*" and that, "[t]o the extent that you find that the plaintiff has proven, by a preponderance of the evidence, that the negligence of . . . Sainval was a proximate cause of any or all of the injuries and damages claimed to have been sustained by the plaintiff, as I have defined proximate cause to you, *you are to proceed to determine the issues as to the amount of damages, following the rules I'm about to give you.*" (Emphasis added.) Notwithstanding these instructions, the jury found *both* that Sainval's negligence was a proximate cause of some or all of the plaintiff's injuries *and* that Bowden's and Johnson's actions were a superseding cause of the injuries. We cannot say with any confidence, therefore, that the jury followed the trial court's instructions with respect to the issue of causation.[20] For this reason, the judgment cannot stand. See, e.g., *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 577, 479 A.2d 781 (1984) (when verdict in civil case "rests [on] a factual finding contradictory to another finding of the same issue by the trier the judgment cannot stand"); *Belchak* v. *New York, New Haven & Hartford Railroad Co.*, 119 Conn. 630, 633, 179 A. 95 (1935) ("The verdict returned by the jury demonstrated conclusively that, in spite of the instructions of the court, [it] had made a mistake in the application of legal principles. Hence it was necessary to set aside [its] verdict." [Internal quotation marks omitted.]). Accordingly, we agree with the plaintiff that she is entitled to a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion D'AURIA, MULLINS and KAHN, Js., concurred.

[1] "Bowden admitted during his trial testimony that he had pleaded guilty to larceny, assault in the first degree, reckless endangerment, and evading responsibility with death or serious injury resulting." *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 43 n.3.

[2] "The plaintiff filed a separate civil action alleging negligent security

practices by the companies that purportedly owned and managed Monterey Village. That action was consolidated with the present case but later was settled and withdrawn prior to trial. The jury nevertheless heard evidence pertaining to one of those companies, Vesta Management Corporation, and was instructed that it could consider for apportionment purposes whether and to what extent its negligence was also a cause of the plaintiff's injuries." *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 43 n.4.

[3] "The operative complaint contained four additional counts directed at Yellow Cab and its owner and sole shareholder, [Bochicchio]. These additional counts alleged that Bochicchio had, among other things, misdirected assets away from Yellow Cab's accounts in an effort to keep funds away from the plaintiff. The counts sounded in fraud and fraudulent transfer, and sought to 'pierce the corporate veil' between Yellow Cab and Bochicchio in the event Yellow Cab was found vicariously liable to the plaintiff for damages. The parties agreed with the court's decision to proceed with a bifurcated trial in which the additional counts would be presented to the jury only if the jury returned a verdict for the plaintiff on the negligence counts and awarded damages." *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 44 n.5.

[4] As we explain more fully in part II of this opinion, the trial court determined that "foreseeability" for purposes of determining negligence and "scope of the risk" for purposes of applying superseding cause were different concepts, in part, on the basis of § 440 of the Restatement (Second) of Torts, and the notes accompanying Connecticut Civil Jury Instruction 3.1-5, which describe "superseding cause" as "any cause intervening between the time of the defendant's allegedly tortious conduct and that of the plaintiff's claimed injury [that], although not disproving that the defendant's conduct proximately caused the plaintiff's claimed injury, prevented the defendant's conduct from being considered a legal cause of that injury." Connecticut Civil Jury Instructions 3.1-5, available at http://www.jud.ct.gov/JI/Civil/Civil.pdf (last visited August 5, 2019). Specifically, the trial court understood the latter statement to mean that the superseding cause doctrine is a special defense that admits the truth of the allegations contained in the plaintiff's complaint, including the plaintiff's contention that the defendant's negligence proximately caused the plaintiff's injuries, but seeks to demonstrate that the plaintiff cannot prevail against the defendant.

[5] This paragraph of the jury charge, along with the four paragraphs of the charge that follow, represents the trial court's instructions on superseding cause, even though the court did not expressly use the term "superseding cause" in those paragraphs.

[6] Although the fifth interrogatory contains no express reference to the term "superseding cause," it is that doctrine that is the subject thereof.

[7] Although we have never adopted the Restatement's definition of superseding cause, we note that it has appeared as dicta in a handful of this court's opinions. See, e.g., *Levesque* v. *Bristol Hospital, Inc.*, 286 Conn. 234, 243 n.12, 943 A.2d 430 (2008); *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 434; *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 46, 801 A.2d 752 (2002).

[8] Connecticut Civil Jury Instruction 3.1-5 provides: "The defendant claims that he did not legally cause the plaintiff's alleged injury because that injury was produced, in material part, by a superseding cause. A superseding cause is any intentionally harmful act, force of nature, or criminal event, unforeseeable by the defendant, [that] intervenes in the sequence of events leading from the defendant's alleged negligence to the plaintiff's alleged injury and proximately causes that injury. Under our law, the intervention of such a superseding cause prevents the defendant from being held liable for the plaintiff's injury on the theory that, due to such superseding cause, the defendant did not legally cause the injury even though (his/her) negligence was a substantial factor in bringing the injury about. Therefore, when a claim of superseding cause is made at trial, the plaintiff must disprove at least one essential element of that claim by a fair preponderance of the evidence in order to prove, by that standard, its own conflicting claim of legal causation.

"In this case, the defendant claims, more particularly, that *<describe alleged intervening conduct or event claimed to constitute a superseding cause>* was a superseding cause of the plaintiff's alleged injury, and thus that (his/her) own negligence did not legally cause that injury. Because such intentionally harmful (conduct / force of nature / criminal event), if unforeseeable by the defendant, would constitute a superseding cause of the plaintiff's alleged injury if it occurred as claimed by the defendant and if it proximately caused the plaintiff's injury, the plaintiff must disprove at least one essential element of that claim by a fair preponderance of the

evidence in order to prove that the defendant legally caused that injury. The plaintiff can meet this burden by proving either 1) that the conduct claimed to constitute a superseding cause did not occur as claimed by the defendant, either because it did not occur at all or because it was not engaged in with the intent to cause harm; or 2) that such conduct was foreseeable by the defendant, in that the injury in question was within the scope of the risk created by the defendant's conduct; or 3) that such conduct was not a substantial factor in bringing about the plaintiff's alleged injury. These, of course, are questions of fact for you to determine based on the evidence. Keep in mind, however, that the defendant does not have any burden to prove the existence of a superseding cause. The burden at all times rests [on] the plaintiff to disprove the defendant's claim of superseding cause as a necessary part of (his/her) proof that the defendant legally caused the plaintiff's injury." (Emphasis in original.)

[9] Although the legal question of whether Sainval owed a duty to the plaintiff is not before us, we previously have stated that, when a defendant claims that an independent intervening force superseded his own negligence, "the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff." (Internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, supra, 315 Conn. 345. This is so because, in determining whether a duty exists, "our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant"; (internal quotation marks omitted) *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191, 74 A.3d 1278 (2013); which is the same inquiry a jury makes in deciding whether a defendant's actions were the proximate cause of the harm. Id., 192. As this court, quoting Prosser and Keeton on the Law of Torts, has explained: " '[T]he question whether there is a duty has most often seemed helpful in cases [in which] the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion [that] has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.' [W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984)] § 42, p. 274; see also id., § 53, p. 358." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 388 n.4, 650 A.2d 153 (1994).

[10] We note that several years before we decided *Sapko*, in *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 37, 946 A.2d 839 (2008), we rejected a nearly identical claim to that which we found persuasive in *Sapko*, namely, that the trial court improperly had denied the defendant's request to charge the jury on the doctrine of superseding cause, when the defendant had argued that the negligence of the plaintiff's employer was the sole proximate cause of the plaintiff's injuries. In that case, the exclusivity provision of the Workers' Compensation Act had prevented the defendant from citing in the plaintiff's employer as an apportionment defendant. See id., 26. In support of its claim that the trial court improperly had denied its request to charge the jury on the superseding cause doctrine, the defendant argued "that our holding in *Barry* is restricted to cases in which the jury is charged with apportioning liability between multiple defendants and that . . . the doctrine remains viable when, as in the present case, contributory negligence and apportionment of liability between two or more defendants are not at issue." Id., 44. In rejecting this claim, we relied solely on the fact that the doctrine had been abandoned in *Barry*, "subject only to certain narrow exceptions," which did not include intervening acts of negligence. Id. We agreed with the defendant, however, that the trial court improperly had precluded it from presenting evidence and argument to the jury that the plaintiff's employer was the sole proximate cause of the plaintiff's injuries. See id., 33 ("[t]his court has determined that a defendant has the right, under a general denial, to introduce evidence that the negligence of another was the sole proximate cause of the plaintiff's injury"). Specifically, we concluded that, "if the [nonparty] employer's actions are the sole proximate cause of the [plaintiff's] injuries, then it follows that the defendant's conduct is not a proximate cause, and the defendant should be entitled to argue and have the jury instructed accordingly . . . ." (Internal quotation marks omitted.) Id., 38, quoting *Steele* v. *Encore Manufacturing Co.*, 7 Neb. App. 1, 8, 579 N.W.2d 563 (1998). Of course, it was a legal distinction without a difference to conclude, on the one hand, that the defendant was prohibited from arguing that the plaintiff's employer was a superseding cause of the plaintiff's injuries

and, on the other hand, that the defendant properly could argue that the employer was the sole proximate cause of the plaintiff's injuries and was entitled to an instruction with respect to this claim. This is so because, as our discussion of the case law makes clear, when a defendant is relieved of liability on the basis of a superseding cause, "it . . . mean[s] simply that the negligent conduct of someone else—and not that of the defendant—is the proximate cause of the event." (Emphasis omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 440; see also, e.g., *Craig* v. *Driscoll*, 262 Conn. 312, 333, 813 A.2d 1003 (2003) ("[t]o act as an intervening cause, the conduct must entirely [break] the causal connection between the defendant's conduct and the plaintiff's injuries so as to be the sole proximate cause of those injuries" [internal quotation marks omitted]); *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 182 (same); *Oberempt* v. *Egri*, 176 Conn. 652, 655, 410 A.2d 482 (1979) (trial court's instruction that intervening negligence "would discharge the defendants [of liability] only if [it] was found to have been the sole proximate cause of the . . . accident . . . was entirely proper" [emphasis omitted]); *Virelli* v. *Benhattie, Inc.*, 146 Conn. 203, 209–10, 148 A.2d 760 (1959) (explaining that superseding cause and sole proximate cause are indistinguishable concepts).

[11] Thus, in light of our precedent and the trial court's instructions predicated on that precedent, we disagree with the Appellate Court that the jury properly could find simultaneously that Sainval's actions were a proximate cause of the plaintiff's injuries and that Bowden's and Johnson's actions were a superseding cause of those same injuries. As we explain more fully in part II of this opinion, under our case law, a finding that conduct constitutes a superseding cause renders the original negligence so insignificant in relation to that superseding cause that the original negligence cannot be deemed to be a proximate cause of the injuries and, therefore, cannot be deemed to be a substantial factor in producing the injuries.

[12] We note that the plaintiff urges us to adopt § 34 of the Restatement (Third) of Torts, published in 2010, which she asserts "merges the viable concepts related to superseding cause (foreseeability and proximate cause) officially into a [single] proximate cause (or scope of liability) analysis without the confusion and prejudice related to use of the superseding cause doctrine." Section 34 of the Restatement (Third) provides: "When a force of nature or an independent act is also a factual cause of harm, an actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious." 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 34, p. 569 (2010). Because the plaintiff did not raise this claim in either the trial court or the Appellate Court, it is not properly before us. Even if it were, however, as the Appellate Court noted, our recent case law "reflects a jurisprudential move toward embracing" the more modern approach to superseding cause prescribed in § 34 of the Restatement (Third) of Torts. *Snell* v. *Norwalk Yellow Cab, Inc.*, supra, 172 Conn. App. 57 n.13. Indeed, the reporters' notes to that section cite this court as one of several courts that *have* embraced the modern approach. See, e.g., 1 Restatement (Third), supra, § 34, reporters' note to comment (c), p. 579. For the reasons previously set forth, however, we are not prepared to abandon the superseding cause doctrine even in cases in which apportionment of liability is statutorily prohibited, and we do not read the Restatement (Third) as advocating its abandonment in such circumstances. To the contrary, comment (c) to § 34 provides that "the advent of comparative principles has *reduced the role for superseding cause*" such that "when third persons . . . are negligent or commit intentional torts, the need for aggressive use of superseding cause to absolve a tortfeasor from liability has subsided *in light of the modification of joint and several liability and of the trend toward permitting comparative responsibility to be apportioned among negligent and intentional tortfeasors*. Comparative responsibility permits liability to be apportioned among multiple tortfeasors and to take account of the causal relationship between each tortfeasor's conduct and the harm as well as the culpability of each tortfeasor." (Emphasis added.) 1 Restatement (Third), supra, § 34, comment (c), pp. 571–72.

[13] We note that the plaintiff's argument also founders on *Kiniry* v. *Danbury Hospital*, 183 Conn. 448, 439 A.2d 408 (1981), in which we rejected a claim that the trial court, by instructing the jury in accordance with § 442 B, had misled the jury into believing "that only intentional conduct on the part of [a third party] would discharge the defendants [of liability for their own negligent conduct]." Id., 456; see id. ("[t]hose portions of the court's charge . . . rebut the defendants' claim that the court charged that only intentional

conduct on the part of [the third party] would discharge the defendants"); see also id., 455 ("[t]he court's charge does not, as the defendants argue, make the intervenor's intentional conduct the sole determinant of the liability of the defendants"). We rejected the defendant's claim because the trial court, in addition to instructing the jury in accordance with § 442 B, also had instructed the jury that "[a]*ny intervening negligence by* [*the third party*] *would discharge* [*the defendant of liability*] *if you were to find that* [*the third party's*] *negligence was the sole proximate cause of* [*the decedent's*] *death. . . .* Therefore, even though you might find that the defendant . . . was negligent in one or more of the particulars alleged in the complaint, if you find that [the defendant's] negligence ceased to be a substantial factor in producing [the decedent's] death and that the negligence of [the third party] had so superseded that of [the defendant], that [the third party], without the negligence of [the defendant] contributing to any material degree, was the real cause for [the decedent's] death, then the negligence of [the defendant] would not be a proximate cause of [the decedent's] death . . . ." (Emphasis added; internal quotation marks omitted.) Id., 455–56 n.2. Thus, because the trial court's instructions made clear to the jury that a superseding cause could be *either* an intentional *or* a negligent act under the defendants' theory of defense, we affirmed the judgment in favor of the plaintiff.

[14] Section 302 B of the Restatement (Second) of Torts provides: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." 2 Restatement (Second), supra, § 302 B, p. 88.

[15] Section 448 of the Restatement (Second) of Torts provides: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." 2 Restatement (Second), supra, § 448, p. 480.

[16] Section 449 of the Restatement (Second) of Torts provides: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." 2 Restatement (Second), supra, § 449, p. 482.

[17] Section 435 of the Restatement (Second) of Torts, entitled "Foreseeability of Harm or Manner of Its Occurrence," provides in relevant part: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." 2 Restatement (Second), supra, § 435 (1), p. 449.

[18] *Ruiz* v. *Victory Properties*, *LLC*, supra, 315 Conn. 320, presents an apt example of the principle set forth in § 442 B. In *Ruiz*, a small child was injured when an older child unintentionally dropped a piece of concrete on her head from the third floor landing of the apartment building where the children resided. Id., 323. The older child had obtained the concrete from the backyard of that apartment building, where he and the victim had been playing. Id. The trial court granted the defendant landlord's motion for summary judgment, concluding that the defendant owed the victim no duty of care "because no reasonable juror could find that her injuries were a foreseeable consequence of the defendant's [failure to maintain the property in a clean and safe condition by leaving loose pieces of concrete in the backyard] and because imposing liability on the defendant would be contrary to overriding public policy considerations." Id. The Appellate Court reversed the judgment of the trial court, and we affirmed the Appellate Court's judgment; id., 323–24; explaining that the defendant "does not dispute that the risk of harm created by its failure to remove the buckets, trash, broken concrete pieces and other debris from the backyard was that children playing in the area might trip on them or throw them at other children. The types of injuries one would expect to result from this type of behavior run the gamut from cuts and bruises to broken bones, concussions and even fractured skulls. [The child's] injuries, although severe, fall squarely along this continuum of harm. That they occurred in an unusual manner, namely, by a child dropping a piece of concrete into the backyard playground from a

third floor balcony instead of throwing it while in the backyard, does not alter this fundamental fact. We therefore agree with the Appellate Court that [the child's] injuries were sufficiently foreseeable that it was inappropriate for the trial court to foreclose the foreseeability question as a matter of law." Id., 336.

As § 442 B of the Restatement (Second) of Torts indicates, however, if all of the facts were the same except that an adult intentionally had dropped the concrete on the child's head, the defendant's liability would turn on whether an adult committing such an act was within the scope of the risk created by the defendant's failure to remove the accumulated debris from its property. Such a case undoubtedly would be resolved in the defendant's favor on a motion for summary judgment because it seems clear that a jury reasonably could not find that such an act was a foreseeable risk of the defendant's negligence.

[19] Section 442 B provides a good illustration of this principle. "A negligently leaves an excavation in a public sidewalk, creating the risk that a traveler on the sidewalk will fall into it. B, passing C on the sidewalk, negligently bumps into him, and knocks him into the excavation. A is subject to liability to C." 2 Restatement (Second), supra, § 442 B, illustration (5), p. 471. If, however, all of the facts are the same except that B intentionally pushes C into the hole, A would not be liable. Id., illustration (7), p. 471. This is true even though the injuries sustained by C in the second example are identical to the injuries sustained in the first. A is not liable in the second instance because the hazard that made A's conduct negligent did not include the risk that a third party would be induced to push someone into the excavated area. Cf. *Stewart* v. *Federated Dept. Stores*, *Inc.*, supra, 234 Conn. 600–601, 612–13 (when department store negligently failed to provide adequate lighting and security in store parking garage located in high crime area, store may be held liable for murder of customer during botched robbery because risk that made store's conduct negligent was opportunity that it presented to criminals to commit such crimes); *Doe* v. *Manheimer*, supra, 212 Conn. 750, 762 (private landowner was not liable for sexual assault that occurred behind overgrown vegetation on landowner's property because it was not reasonably foreseeable that such vegetation would provide incentive and shield for commission of such assault when "there was no evidence tending to demonstrate that the [landowner] had had any past experience that might reasonably have led him to perceive and act on the atypical association between 'natural shields' such as overgrown vegetation and violent criminal activity"); *Burns* v. *Gleason Plant Security*, *Inc.*, 10 Conn. App. 480, 486, 523 A.2d 940 (1987) ("When [the driver] left the keys in the unlocked car in a high crime area, it may well have been a foreseeable risk that the car would be stolen by a third party and negligently operated so as to cause harm to an innocent party. . . . It was not also foreseeable, however, that a third party would steal the car, drive elsewhere, leave the car, enter a store, commit an armed robbery, and assault an innocent person in the course of that robbery. To hold otherwise would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight." [Citation omitted.])

[20] No doubt this problem stems, at least in part, from the admonition at the conclusion of the fourth interrogatory, which, in direct contradiction to the court's charge, effectively instructed the jury to consider, in connection with the fifth interrogatory, whether "the accident that occurred . . . was outside the scope of the risk created by [Sainval's] leaving his key in the ignition" only if it had found, in response to the fourth interrogatory, that the plaintiff had proven "that some or all of the injuries she sustained . . . were proximately caused by the negligence of . . . Sainval." In accordance with the court's charge, however, once the jury found that Sainval's negligence was a proximate cause of the accident, there could be no finding of a superseding cause. Thus, the interrogatories merely should have queried the jury whether the plaintiff had proven that Sainval's negligence was a proximate cause of the plaintiff's injuries *or*, *instead*, whether Bowden's recklessness in driving onto a sidewalk after striking a vehicle in front of him fell outside the scope of the risk created by Sainval's negligence because it was not reasonably foreseeable that someone stealing the taxicab would operate it in such a manner.