******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## JUAN CRUZ ET AL. *v.* SPEC PERSONNEL, LLC, ET AL.
## (AC 46515)

Alvord, Moll and Keller, Js.[*]

*Syllabus*

The defendant S Co. appealed from the trial court's judgment for the plaintiffs, J and E, rendered following a jury trial. J sustained serious workplace injuries when an approximately 1300 pound load of lights, which had been sold and shipped by S Co. to J's employer, R Co., fell onto him. Following delivery to R Co., the lights, which had not been secured by stretch wrap to the pallet on which they had been delivered, were placed on the top shelf of a storage rack in a warehouse operated by R Co. The lights subsequently slid off the pallet onto J after a temporary staffer for R Co., while operating a reach truck, made contact with the lights. J's wife, E, claimed an attendant loss of consortium. S Co. claimed, inter alia, that the court, in denying its postverdict motion for judgment notwithstanding the verdict, improperly concluded that, as a product shipper, it owed a duty of care that extended to J and the type of harm he suffered in the postdelivery warehouse accident. *Held*:

The trial court, in denying the defendant's postverdict motion for judgment notwithstanding the verdict, improperly determined that S Co. owed a duty of care to protect against J's workplace injuries, as J's workplace injuries were not a reasonably foreseeable consequence of S Co.'s presumed failure to secure the lights to the pallet by stretch wrap before they were shipped.

Argued October 10, 2024—officially released June 2, 2026

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the judicial district of Waterbury, where Rexel Holdings USA Corp. intervened as a plaintiff; thereafter, Signify North America Corporation et al. were cited in as defendants; subsequently, the plaintiff AdaMaria Medina et al. withdrew from the action; thereafter, the named plaintiff et al. withdrew the action

---

[*]This appeal originally was argued before a panel of this court consisting of Judges Alvord, Moll, and Flynn. Thereafter, Judge Flynn recused himself and did not participate in the consideration of the case. Justice Keller was added to the panel and has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

as against the named defendant et al.; subsequently, the case was tried to the jury before *Rosen, J.*; verdict and judgment for the named plaintiff et al.; thereafter, the court denied the motion for judgment notwithstanding the verdict filed by the defendant Signify North America Corporation and granted in part its motion for remittitur, and the defendant Signify North America Corporation appealed to this court; subsequently, the court, *Rosen, J.*, awarded offer of compromise interest and postjudgment interest to the named plaintiff et al., and the defendant Signify North America Corporation filed an amended appeal. *Reversed*; *judgment directed*.

*Dustin F. Guzior*, pro hac vice, with whom were *Jeffrey R. Babbin* and *Elizabeth A. Rose*, pro hac vice, and, on the brief, *Garrard R. Beeney*, pro hac vice, and *Michael T. Lemanski*, pro hac vice, for the appellant (defendant Signify North America Corporation).

*Michael S. Taylor*, with whom were *Brendon P. Levesque* and, on the brief, *Corinne A. Burlingham*, *Andrew P. Garza*, *Ryan McKeen*, *Andrew Ranks* and *Alexa Mahoney*, for the appellees (named plaintiff et al.).

*Opinion*

MOLL, J. The defendant Signify North America Corporation[1] appeals from the judgment of the trial court

---

[1] The following parties either were named as defendants in the original complaint or were later cited into the present action as defendants: (1) Spec Personnel, LLC, which also was identified separately as Special Personnel, LLC; (2) JeanPaul D. Paez; (3) Philips North America, LLC; (4) Philips Lighting North America Corporation; (5) Signify North America Corporation; (6) C.H. Robinson Worldwide, Inc.; (7) Venture Properties, LLC; (8) A. Duie Pyle, Inc.; and (9) Randstad North America, Inc. The plaintiffs withdrew their claims against all of the defendants, except for Philips Lighting North America Corporation and Signify North America Corporation, prior to the conclusion of trial.

The appeal form filed in this appeal identifies both Signify North America Corporation and Philips Lighting North America Corporation as the appellants; however, the principal appellate and reply briefs identify a single appellant named "Signify North America Corporation [formerly known as] Philips Lighting North America Corporation." The plaintiffs' appellate brief likewise refers to a single appellant named "Signify North America Corporation (formerly known as Philips

rendered following a jury verdict returned in favor of the plaintiffs Juan Cruz (Juan) and Emily Cruz (Emily)[2] on their respective claims of negligence and loss of consortium in connection with severe workplace injuries that Juan sustained when an approximately 1300 pound packaged load of lights, sold and shipped to his employer by the defendant, fell from a storage rack and onto him. On appeal, the dispositive claim that the defendant raises is that the court, in denying its postverdict motion for judgment notwithstanding the verdict, improperly concluded that it owed, as a product shipper, a duty of care that extended to Juan and the type of harm he suffered in a postdelivery warehouse accident. We agree and, accordingly, reverse the judgment of the trial court.[3]

Lighting North America Corporation) . . . .” Additionally, (1) the verdict form filed in the present action reflects that the jury returned its verdict against a single defendant, “Philips Lighting North America Corporation, now known as Signify North America Corporation,” (2) postverdict motions filed in the present action were filed by “Signify North America Corporation (including its predecessor Philips Lighting North America Corporation), and (3) the trial court, *Rosen, J.*, in denying the postverdict motions at issue, referred to the “defendant Signify North America Corporation (formerly Philips Lighting North America Corporation) . . . .” Thus, on the basis of the record, there appears to be no dispute that there is a single entity that formerly was known as Philips Lighting North America Corporation and now is known as Signify North America Corporation. For ease of reference, we (1) treat any references in the record to Philips Lighting North America Corporation and to Signify North America Corporation to be one and the same, (2) treat Signify North America Corporation as the sole appellant in this appeal, and (3) refer to Signify North America Corporation as the defendant.

[2] The following parties commenced the present action as additional plaintiffs: (1) AdaMaria Medina; and (2) Juan Cruz on behalf of (a) Nathan Medina and (b) Jonathan Lopez. Those parties withdrew their claims prior to trial. Additionally, shortly after the present action had been commenced, Rexel USA Inc., formerly known as Rexel Holdings USA Corp. (Rexel), Juan’s employer, was granted permission to intervene as an additional plaintiff and to file an intervening complaint seeking reimbursement for workers’ compensation benefits that it had paid or would become obligated to pay to Juan. See General Statutes § 31-293. The claims involving Rexel are not germane to this appeal, and Rexel is not participating in this appeal. For ease of reference, we refer to Juan and Emily collectively as the plaintiffs and individually by first name.

[3] The defendant further claims that the court improperly denied its motion for judgment notwithstanding the verdict or its separate motion

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. The defendant is in the business of selling lighting products branded under its name. On September 1, 2017, the defendant received at its warehouse in Pennsylvania a sealed container holding packaged loads of lights, which had been manufactured and purchased in China. Thereafter, the defendant sold a packaged load of lights weighing approximately 1300 pounds (lights) to Juan's employer, Rexel USA Inc., formerly known as Rexel Holdings USA Corp. (Rexel), which is a wholesale electrical distributor. On September 13, 2017, the defendant loaded the lights, together with a pallet upon which the defendant had placed the lights, onto a tractor trailer for shipment to Rexel's warehouse in Hartford. The lights were delivered to Rexel on September 14, 2017, and Rexel accepted the delivery that same day. Following delivery, Rexel stored the lights, along with the pallet upon which they sat but to which they were not secured,[4] on the top shelf of a storage rack in the warehouse.

On September 19, 2017, Juan was working in the aisle of the warehouse where the storage rack holding the lights was located. Meanwhile, JeanPaul D. Paez, who was employed by a temporary staffing agency and assigned to work at Rexel, was working in an adjacent aisle. While operating a reach truck to retrieve a product situated on a storage rack in the adjacent aisle, Paez made

to set aside the verdict and for a new trial because (1) its conduct was not a substantial factor that caused Juan's injuries, (2) the court incorrectly instructed the jury on the issue of proximate causation, (3) the court committed several harmful evidentiary errors, and (4) the jury's verdict depended on conjecture and was against the great weight of the evidence. We need not reach these additional claims in light of our resolution of the defendant's dispositive duty of care claim on appeal.

[4] At trial, the parties disputed whether the defendant had secured the lights by stretch wrapping them to the pallet before shipping them to Rexel. The defendant maintains on appeal that there was insufficient evidence in the record to support a finding that it failed to stretch wrap the lights to the pallet. As we explain later in this opinion, in resolving the defendant's duty of care claim, we will presume that the defendant did not stretch wrap the lights to the pallet.

contact with the lights, whereupon they slid off from the pallet and fell onto Juan. Juan sustained severe injuries and became a paraplegic as a result of the incident.

The plaintiffs commenced the present action in 2018. In the plaintiffs' third amended complaint dated September 11, 2019, which was their operative complaint, Juan alleged that his injuries were a direct and proximate result of the defendant's negligence and carelessness in failing (1) to train and to adequately supervise its agents, servants, apparent agents, and/or employees, and (2) to ensure that pallets of its products were packed safely and securely. Additionally, Emily asserted an attendant claim of loss of consortium. On November 26, 2019, the defendant filed an answer denying the plaintiffs' material allegations or leaving the plaintiffs to their proof. The defendant also asserted two special defenses, alleging that (1) Juan's injuries were caused by Paez' intervening conduct and (2) the plaintiffs failed to state claims upon which relief could be granted.

On September 13, 2021, the defendant filed a motion for summary judgment claiming that it was not liable for negligence because, inter alia, Juan's workplace injuries were not foreseeable, and, thus, it did not owe a duty of care to Juan. On December 14, 2021, the trial court, *Budzik, J.*, denied the motion. In rejecting the defendant's foreseeability argument, the court reasoned that, "[w]hile the specific facts of this case may be unusual . . . the general nature of [Juan's] injur[ies] [are] entirely foreseeable. More specifically . . . it is foreseeable that a pallet of lighting products might fall on someone if they are not safely and securely packaged for transportation to the warehouse, or for normal handling when they are in the warehouse. . . . [I]t [also] is entirely foreseeable that [the defendant's] lighting products might be placed on an upper storage shelf (or any elevated position) in the warehouse, as opposed to exclusively on the floor of the warehouse."

The case was tried to a jury over the course of three weeks between September 13 and October 5, 2022. The

jury heard testimony from various witnesses, including the plaintiffs and S. Paul Singh, Ph.D., the plaintiffs' expert witness in packaging, transportation of material, and handling, and the court, *Rosen, J.*, admitted various exhibits into the record.

Following the close of evidence, the court charged the jury in relevant part as follows: "This is a negligence case. Negligence is the violation of a legal duty to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances. In determining the care that a reasonably prudent person would use in the same circumstances, you should consider all of the circumstances which were known or should have been known to the defendant at the time of the conduct in question. Whether care is reasonable depends upon the dangers that a reasonable person would perceive in those circumstances. It is common sense that the more dangerous the circumstances, the greater the care that ought to be exercised. . . .

"Negligence is a proximate cause of an injury if it was a substantial factor in bringing the injury or harm about. In other words, if the defendant's negligence contributed materially and not just in a trivial or inconsequential manner to the production of the injury or harm, then the defendant's negligence was a substantial factor. . . .

"To prove that an injury is a reasonably foreseeable consequence of negligent conduct, the plaintiffs need not prove that the defendant actually foresaw or should have foreseen the extent of the harm suffered or the manner in which it occurred. Instead, the plaintiffs must prove that it is a harm of the same general nature as that which a reasonably prudent person in the defendant's position should have anticipated, in view of what the defendant knew or should have known at the time of the negligent conduct."[5]

[5]The court further instructed the jury that the defendant "has denied that it was negligent and contends that [Rexel] was the sole proximate cause of [Juan's] injuries; that is, that Rexel's alleged negligence was

On October 5, 2022, the jury returned a verdict in favor of the plaintiffs, which the court accepted the same day. The jury answered interrogatories as part of the verdict, finding that (1) the defendant (a) failed to adequately supervise its agents, servants, or employees and (b) failed to ensure that pallets of its products were packed safely and securely, but (c) it did not fail to train its agents, servants, or employees, (2) the defendant's negligence was a proximate cause of the plaintiffs' injuries and losses, and (3) the plaintiffs' economic and noneconomic damages totaled $100 million. The jury further found that (1) Paez was negligent and (2) Paez' negligence was a proximate cause of the plaintiffs' injuries.[6] The jury apportioned 90 percent of the total negligence to the defendant and the remaining 10 percent to Paez, such that the plaintiffs were awarded $90 million in damages against the defendant. Subsequently, in granting in part a motion for remittitur filed by the defendant, the court reduced the plaintiffs' damages to $41,859,072.98, which remittitur the plaintiffs accepted. The court later awarded the plaintiffs (1) $1,844,092.86 in offer of compromise interest pursuant to General Statutes § 52-192a (c) and (2) postjudgment interest pursuant to General Statutes § 37-3b (a) at a rate of 7 percent per annum.

On November 23, 2022, the defendant filed a motion for judgment notwithstanding the verdict,[7] claiming in relevant part that it did not owe a duty of care to Juan in connection with Juan's workplace injuries because (1) the injuries were "directly caused by numerous unforeseeable

the only substantial factor causing [Juan's] injuries. . . . If you find that [the defendant] has shown that Rexel was the sole proximate cause of [Juan's] injuries, you must then render a verdict in [the defendant's] favor."

[6]Spec Personnel, LLC, the staffing agency that assigned Paez to work at Rexel, was identified as an apportionment party alongside Paez; however, the jury found that the defendant had failed to demonstrate that Spec Personnel, LLC, was negligent and that such negligence was a proximate cause of the plaintiffs' injuries and losses.

[7]On September 27, 2022, after the plaintiffs had notified the court on the record that they were resting their case-in-chief, the defendant orally moved for a directed verdict, inter alia, on the ground that it owed no duty of care to Juan. The court reserved its decision on the motion.

acts of negligence" by Rexel's employees, including their failure to inspect and to store the lights properly, as well as by Paez, and **(2)** imposing a duty "on product shippers [like the defendant] . . . to anticipate or to hold them responsible for accidents in customer warehouses resulting from the customer's unforeseeable negligence or failure to implement and follow safety protocols" would violate public policy. On December 19, 2022, the plaintiffs filed an objection, and, on December 30, 2022, the defendant filed a reply memorandum. The court heard argument on the motion on January 4, 2023.

On April 26, 2023, the court denied the defendant's motion for judgment notwithstanding the verdict.[8] The court rejected the defendant's contention that it did not owe a duty of care to Juan with respect to Juan's workplace injuries, determining that **(1)** the harm sustained by Juan was a reasonably foreseeable consequence of the defendant's presumed failure to secure the lights to the pallet[9] and **(2)** imposing a duty of care on the defendant would not be inconsistent with public policy. This amended appeal followed.[10] Additional facts and procedural history will be set forth as necessary.

The defendant's dispositive claim on appeal is that the court, in denying its motion for judgment notwithstanding the verdict, improperly concluded that it owed a duty of care to Juan to protect against Juan's workplace injuries by stretch wrapping the lights to the pallet before

---

[8]The court also denied the defendant's motion to set aside the verdict and for a new trial, which it filed alongside its motion for judgment notwithstanding the verdict.

[9]Later in its decision, the court rejected the defendant's claim that there was insufficient evidence regarding the condition of the lights when they left the defendant's custody such that, as the defendant posited, the jury relied on speculation to conclude that the defendant did not properly secure the lights to the pallet.

[10]The defendant's original appeal was taken from the judgment rendered on the jury's verdict following the court's rulings on the defendant's postverdict motions and the plaintiffs' acceptance of the remittitur. The defendant subsequently filed an amended appeal to encompass the court's awards of offer of compromise interest and postjudgment interest.

shipping them to Rexel. Assuming that the evidence was sufficient to demonstrate that it failed to secure the lights to the pallet, the defendant contends that it owed no duty of care to Juan with respect to Juan's workplace injuries because **(1)** as a matter of law, Juan's workplace injuries were not a reasonably foreseeable consequence of its presumed failure to secure the lights to the pallet, and **(2)** even if Juan's workplace injuries were reasonably foreseeable, imposing a duty of care on it under the circumstances of the present action would violate public policy. The plaintiffs counter that the court correctly determined that the defendant owed a duty of care to Juan because **(1)** Juan's workplace injuries were a reasonably foreseeable result of the defendant's presumed conduct and **(2)** concluding that the defendant owed a duty of care would not contravene public policy. For the reasons that follow, we agree with the defendant that it did not owe a duty of care to Juan because Juan's injuries were not a reasonably foreseeable result of its presumed conduct.[11]

We begin by setting forth the governing standard of review and applicable legal principles. "The standard for appellate review of the denial of a motion for judgment notwithstanding the verdict is well settled and mirrors the standard applicable to a motion for a directed verdict. Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to deny the defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw

---

[11]Because we agree with the defendant that no duty of care arose on the basis that Juan's workplace injuries were not reasonably foreseeable, we need not address its alternative assertion that imposing a duty of care would violate public policy. See *Dushay* v. *Southern Connecticut Hockey League, LLC*, 234 Conn. App. 609, 624 n.9, 344 A.3d 175 (2025) ("[b]ecause we determine that there is no duty of care on the basis of our conclusion that the harm was not reasonably foreseeable, it is not necessary to analyze the second prong of the test by undertaking a public policy analysis").

logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . The foregoing standard of review also governs the trial court's denial of the defendant's motion for judgment notwithstanding the verdict because that motion is not a new motion, but [is] the renewal of [the previous] motion for a directed verdict." (Internal quotation marks omitted.) *Cockayne* v. *Bristol Hospital, Inc.*, 210 Conn. App. 450, 458, 270 A.3d 713, cert. denied, 343 Conn. 906, 272 A.3d 1128 (2022).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . We sometimes refer to the scope of that duty as the requisite standard of care." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 333 Conn. 816, 825, 220 A.3d 1 (2019). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Internal quotation marks omitted.) *Bifolck* v. *Philip Morris, Inc.*, 324 Conn. 402, 443, 152 A.3d 1183 (2016). "Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citation omitted; internal quotation marks omitted.) *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, 340 Conn. 200, 210–11, 263 A.3d 796 (2021).

"[T]he test for the existence of a legal duty of care entails **(1)** a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and **(2)** a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." **(**Internal quotation marks omitted.**)** *McFarline* v. *Mickens*, 177 Conn. App. 83, 92, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Foreseeability is a critical factor in the analysis, because no duty exists unless an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result . . . ." **(**Internal quotation marks omitted.**)** *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, supra, 340 Conn. 211. "[O]ur threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . The idea of risk in this context necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may possibly follow. . . . Accordingly, the fact finder must consider whether

the defendant knew, or should have known, that the situation at hand would obviously and naturally, even though not necessarily, expose [the plaintiff] to probable injury unless preventive measures were taken." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, supra, 333 Conn. 825–26.

"[T]he analysis of foreseeability logically cannot be extended so far that the term general harm incorporates any accident . . . with no consideration given to the direct cause of the accident. It is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm. In defining the limits of duty, we have recognized that [w]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand. . . . Articulated another way, the attenuation between [the plaintiff's] harm and [the defendant's] conduct is nothing more than a determination of whether the harm was a reasonably foreseeable consequence of the [defendant's] conduct. It is a well established tenet of our tort jurisprudence that [d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable. . . . [A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. . . . Due care is always predicated on the existing circumstances."[12]

[12]We note that there is an inevitable overlap that exists concerning the legal principles of duty of care, which is at issue on appeal, and proximate cause. As our Supreme Court has explained, "when a defendant claims that an independent intervening force superseded his own negligence, 'the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff.' . . . *Ruiz* v. *Victory Properties, LLC*, [315 Conn. 320, 345, 107 A.3d 381 (2015)]. This is so because, in determining whether a duty exists, 'our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant' . . . *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191, 74 A.3d 1278 (2013); which is the same inquiry a jury makes in deciding whether a defendant's actions were the proximate cause of the harm. Id., 192. As [our Supreme Court], quoting Prosser and Keeton on the Law of Torts, has explained: '"[T]he

(Citations omitted; footnotes omitted; internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 574–75, 717 A.2d 215 (1998). "[I]t is well established [however] that [t]he injury resulting from the breach of duty need not be the direct or immediate result of the wrongful act; if it is probable and a natural result, that is according to the operations of natural laws, it is enough. . . . The mere fact that the act of another person concurs, cooperates or contributes, in any degree whatever in producing the injury, is of no consequence . . . . [I]n no case is the connection between an original act of negligence and an injury actually broken if a [person] of ordinary sagacity and experience, acquainted with all the circumstances, could have reasonably anticipated that the [direct cause of the harm] might, not improbably but in the natural and ordinary course of things, follow his act of negligence." (Internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 346, 107 A.3d 381 (2015).

"Although, typically, [foreseeability] is a question of fact for the jury . . . it becomes an issue of law for the court if no reasonable fact finder could conclude that the injury was within the foreseeable scope of the risk such that the defendant should have recognized the risk and taken precautions to prevent it. . . . In other words, foreseeability becomes a conclusion of law . . . when . . . a fair and reasonable [person] could reach only one conclusion . . . ." (Citation omitted; internal quotation marks omitted.) *Brooks* v. *Powers*, 328 Conn. 256, 273, 178 A.3d 366 (2018).

question whether there is a duty has most often seemed helpful in cases [in which] the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion [that] has in fact occurred. Or, again reverting, whether the conduct is the 'proximate cause' of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same." [W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984)] § 42, p. 274; see also id., § 53, p. 358.' " *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 743 n.9, 212 A.3d 646 (2019).

In rejecting the defendant's duty of care claim raised in its postverdict motion for judgment notwithstanding the verdict, the court reasoned that "the plaintiffs . . . presented expert testimony to the effect that the [lights] would not have fallen had they been stretch wrapped to the pallet. The defendant knew and understood that its lighting products were required to be stretch wrapped to the pallet, that the products that it shipped to [Rexel's] warehouse would be stored in the warehouse, including on above-ground racking, and that a product that was not properly secured could fall and injure someone. Accordingly, the court finds that the harm to Juan . . . was foreseeable. See *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 333, 430 A.2d 1 (1980) ('so long as harm of the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizarre or unforeseeable')." (Footnote omitted.) Later in its decision, the court further stated that "the defendant shipped a 1300 pound pallet of lighting products knowing that it was at least reasonably foreseeable that they would be stored in a warehouse and could fall if not properly stretch wrapped to the pallet."

The defendant asserts on appeal that, as a matter of law, Juan's workplace injuries were not a reasonably foreseeable consequence of its presumed failure to stretch wrap the lights to the pallet for two reasons. First, the defendant concedes that it "had a duty [to secure its products] to protect against accidents that might occur in the normal course of *shipment*"; (emphasis in original); such as injuries caused by an unsecured load to workers during loading or to motorists during transit; however, as the defendant posits, the unsecured lights did not cause any injuries during the shipping and delivery process, and "[Juan's] workplace accident does not come close to a normal and natural consequence of a shipping error." The defendant contends that, following delivery of the lights, (1) "it was Rexel's duty to safely inspect, handle, and store the [lights] and to operate a safe warehouse," and (2) the defendant maintained no control over the

lights or Rexel's handling thereof, such that it could not be expected to foresee new zones of harm created by Rexel following delivery. Thus, the defendant argues that "the reasonably foreseeable zone of risk associated with preparing a package *for shipment* does not—even at its outermost bounds—extend to accidents involving the package several days after delivery. The law does not allow the [plaintiffs] to extend the zone of risk to a completely different place, time, and set of circumstances." (Emphasis in original.) In short, the defendant maintains that "[Juan's] workplace accident, five days after delivery [of the lights], was not within the zone of risk that [the defendant's] supposed shipping error created."

Second, assuming that its duty of care survived beyond Rexel's acceptance of the lights following delivery, the defendant asserts that its presumed failure to stretch wrap the lights to the pallet was an "indirect and relatively remote" contribution to Juan's injuries, whereas the unforeseeable third-party negligence of Rexel and Paez after the lights were delivered to and accepted by Rexel was the "direct cause" of the injuries. The defendant asserts that, notwithstanding testimony adduced at trial reflecting that Rexel **(1)** inspected all packages arriving at its warehouse for damage, **(2)** had the ability to rewrap unsecured packages prior to handling and storing them, and **(3)** would not place unsecured packages on a storage rack, Rexel stored the unsecured lights on the top shelf of a storage rack, which created an " 'unexpected' " danger that was not a normal and natural consequence of the defendant's conduct. With respect to Paez, the defendant contends that it was "far from normal" for Paez to engage in negligent conduct, particularly in his operation of the reach truck prior to the incident. Moreover, the defendant maintains that the plaintiffs failed to adduce evidence at trial reflecting that the defendant "knew or reasonably should have known of Rexel's unsafe workplace and Paez' unsafe operation of a reach truck . . . ."

In response, the plaintiffs argue that Juan's workplace injuries were a reasonably foreseeable result of the

defendant's presumed failure to stretch wrap the lights to the pallet. The plaintiffs maintain that "[Juan's] injuries, and [the] harm of the general nature suffered, were foreseeable because they are an anticipated consequence of defective product packaging and warehouse operations" and that "[i]t is simply not any great leap to anticipate that an unsecured product might slip from its pallet and injure someone." The plaintiffs also maintain that, under the applicable law, any third-party negligence by Rexel "does not eliminate the defendant's negligent conduct."[13]

Preliminarily, we emphasize that, on the basis of the parties' respective appellate briefs, there is no dispute

[13]The plaintiffs also maintain that the defendant, in essence, is attempting to apply the doctrine of superseding cause, which doctrine, pursuant to our Supreme Court's decision in *Barry* v. *Quality Steel Products*, *Inc.*, 263 Conn. 424, 446, 820 A.2d 258 (2003), has been "abrogated . . . in most tort contexts." *Sapko* v. *State*, 305 Conn. 360, 363, 44 A.3d 827 (2012); see also *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 748–50, 212 A.3d 646 (2019) ("In light of the significant changes to our tort system implemented by tort reform . . . [our Supreme Court] determined in *Barry* that the doctrine of superseding cause no longer serves a useful purpose in our jurisprudence when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries. [In such] circumstances, superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis. . . . [B]ecause our statutes allow for apportionment among negligent defendants . . . and because Connecticut is a comparative negligence jurisdiction . . . the simpler and less confusing approach to cases . . . [in which] the jury must determine which, among many, causes contributed to the [plaintiff's] injury, is to couch the analysis in proximate cause rather than allowing the defendants to raise a defense of superseding cause. . . .

"In reaching [its] determination in *Barry*, [our Supreme Court] expressly limited [its] holding to cases in which a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence, stating that our decision did not necessarily affect those cases [in which] the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct. . . . Later, [our Supreme Court] made clear that [its] holding in *Barry* did not affect those types of cases." (Citations omitted; internal quotation marks omitted.)) We do not construe the defendant as asserting a claim premised on the doctrine of superseding cause; rather, the defendant properly frames its claim in terms of foreseeability.

that the defendant maintained a duty to stretch wrap the pallets of products that it shipped to Rexel. Indeed, the parties executed a stipulation, which was admitted into evidence, providing in relevant part that, "[p]rior to September 19, 2017, [the defendant] was aware of [Rexel's] shipping requirements, which stated that [the defendant] was required to 'palletize and stretch wrap all shipments' sent to [Rexel]." The dispositive issue on appeal, then, is whether the scope of that duty extended to protect against Juan's workplace injuries.

In addressing the defendant's claim regarding foreseeability, we consider our Supreme Court's decision in *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 563, to be instructive. In *Lodge*, while responding to a false fire alarm, several firefighters were injured or killed when their fire engine crashed into a tree following a brake failure caused by negligent maintenance. Id., 567–70. Two injured firefighters, the representatives of the estates of two deceased firefighters, and three of the firefighters' spouses (plaintiff firefighters) commenced an action alleging that the companies that had transmitted the false alarm (defendant companies) were liable for the plaintiff firefighters' injuries as a result of the defendant companies' negligent transmission of the false alarm to which the firefighters had responded. Id., 566–67, 570. Following trial, the jury returned a verdict in favor of the plaintiff firefighters. Id., 567. The defendant companies appealed from the judgment rendered on the verdict to this court, whereupon our Supreme Court transferred the appeal to itself pursuant to General Statutes § 51-199 (c). Id.

On appeal, our Supreme Court reversed the trial court's judgment, concluding that the defendant companies did not owe the plaintiff firefighters a duty of care to prevent the harm suffered. Id., 578. Our Supreme Court determined that, "[n]otwithstanding the retrospective foreseeability of the possibility of the engine's brake failure, we agree with the [defendant companies] that the harm suffered by the [plaintiff firefighters] qualifies under the category of an unforeseeable consequence.

Liability may not be imposed merely because it might have been foreseeable that some accident could have occurred; rather, liability attaches only for *reasonably* foreseeable consequences. . . . We conclude that the brake failure of a negligently maintained fire engine is beyond the scope of the reasonably foreseeable risks created by the transmission of a false alarm and that legal responsibility for the resulting accident should not extend to [the defendant companies]." (Citations omitted; emphasis in original.) Id., 577. Our Supreme Court observed that "the analysis of foreseeability logically cannot be extended so far that the term general harm incorporates any accident involving a fire engine responding to a false alarm with no consideration given to the direct cause of the accident." (Internal quotation marks omitted.) Id., 574. Although positing that, in some situations, imposing liability on the initiator of a negligently transmitted false alarm in connection with accidents involving emergency responders might be reasonable, our Supreme Court determined that "[i]t cannot reasonably be said . . . that liability for negligently causing a false alarm should include the risk that the emergency vehicle will be negligently maintained and utilized, causing it to experience brake failure. Imposing liability on the [defendant companies] for a harm that they reasonably could not be expected to anticipate and over which they had no control would serve no legitimate objective of the law." Id., 577–78. As our Supreme Court concluded: "In every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability. Although that line is often amorphous and difficult to discern, we conclude that it has been crossed in this case. The possibility that a city would so negligently maintain its vehicles and that firefighters would operate a fire engine, the mechanical soundness of which was clearly in doubt, is sufficiently remote that a reasonable person should not be expected to anticipate such an event. To hold otherwise would be to convert the imperfect vision

of reasonable foreseeability into the perfect vision of hindsight."[14] (Internal quotation marks omitted.) Id., 578.

Guided by the rationale of *Lodge*,[15] we conclude that no reasonable fact finder could find that Juan's workplace injuries were a reasonably foreseeable consequence of the defendant's presumed failure to secure the lights to the pallet, such that, as a matter of law, we resolve the issue of foreseeability in the defendant's favor. See *Brooks* v. *Powers*, supra, 328 Conn. 273. In a vacuum, failing to secure the lights to the pallet unquestionably increased the foreseeable risk that the lights could fall from the pallet and injure someone; however, as *Lodge* instructs, "the analysis of foreseeability logically cannot

[14]Our Supreme Court further determined that public policy did not support the imposition of a duty of care on the defendant companies. *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 578–86.

[15]In concluding that Juan's workplace injuries were foreseeable, the trial court addressed, and distinguished, *Lodge*. The trial court observed that, in *Munn* v. *Hotchkiss School*, 24 F. Supp. 3d 155 (D. Conn. 2014), aff'd, 724 Fed. Appx. 25 (2d Cir. 2018), the United States District Court for the District of Connecticut interpreted *Lodge*'s holding to be "fundamentally concerned with cause in fact, not the scope of duty. . . . Although [our Supreme] Court framed the [plaintiff firefighters'] harm as 'too remote' from the [defendant companies'] conduct to require liability, 'remote' was used to describe the closeness of the relationship between the [plaintiff firefighters'] harm and the [defendant companies'] conduct, not to refer to the probability, or improbability, of that harm occurring. . . . Ultimately, [our Supreme] Court indicated that the [plaintiff firefighters] had sued the wrong defendant, not that the anticipated harm was unforeseeable if liability were asserted against another defendant under the same circumstances." (Citations omitted.) Id., 175–76. The trial court, in turn, stated that "*Lodge* . . . involved [firefighters] performing an act that they would not have performed but for the [defendant companies'] negligence, during which [the firefighters] sustained injuries. . . . [T]he injury [in *Lodge*] would have occurred if the [firefighters] were performing the action regardless of the reason; the fire [engine's] brakes would have failed even if the firefighters were responding to a real emergency . . . . Thus, the injuries in *Lodge* . . . were not foreseeable." On the basis of our reading of *Lodge*, however, *Lodge* plainly and expressly addressed the issue of duty and whether, under the circumstances of that case, the plaintiff firefighters' injuries were a reasonably foreseeable consequence of the defendant companies' negligent transmission of the false fire alarm. Thus, we disagree with the trial court's determination that *Lodge* does not support the defendant's duty of care claim.

be extended so far that the term 'general harm' incorporates any accident . . . with no consideration given to the direct cause of the accident." *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 574. In the present case, we cannot reasonably conclude that the risk stemming from the defendant's presumed failure to secure the lights to the pallet encompassed **(1)** Rexel accepting the delivery of the unsecured lights and—notwithstanding uncontroverted testimony in the record that Rexel would **(a)** inspect delivered products and **(b)** not store products that were "dangerous" or "not safe" on their storage racks[16]—placing the unsecured lights on the top shelf of a storage rack, and **(2)** Paez, several days after the lights had been delivered to and accepted by Rexel, engaging in negligent conduct that contributed to the lights falling onto Juan, as found by the jury.[17] Under these circumstances, "a [person] of ordinary sagacity and experience, acquainted with all the circumstances"; (internal quotation marks omitted) *Ruiz* v. *Victory Properties, LLC*, supra, 315 Conn. 346; could not "have reasonably anticipated that the [direct cause of the harm, namely, the conduct of Rexel and Paez] might, not improbably but in the natu-

---

[16]Robert Kelly, the warehouse manager of Rexel's warehouse in Hartford at the time of the incident, testified that Rexel would not place anything "dangerous" on a storage rack but, rather, "[Rexel would] fix it." Claudio Solano, a receiving supervisor for Rexel's warehouse at the time of the incident, testified that, if a product delivered and placed on the loading dock was "not safe, [then] it [would not] get put up on [a storage] rack." Kelly and Solano further testified that Rexel had a stretch wrap machine at the warehouse that, if needed, could be used to add additional stretch wrap to products.

[17]The court's charge to the jury included the following instructions: "[The defendant] claims that the plaintiffs' injuries were a direct and proximate result of the negligence and carelessness of . . . Paez, in one or more of the following ways in that he, one, failed to clear adjacent aisles of Rexel or Spec [Personnel, LLC] employees prior to lifting the pallet; two, did not ensure that adjacent aisles were clear of Rexel or Spec [Personnel, LLC] employees before he operated the forklift; and, three, failed to inspect the pallet of lighting products to ensure that the load was properly secured to the pallet." In the interrogatory responses accompanying the jury's verdict, the jury found that **(1)** Paez was negligent and **(2)** Paez' negligence was a proximate cause of the plaintiffs' injuries and losses.

ral and ordinary course of things, follow [the] act of negligence." (Internal quotation marks omitted.) Id. In short, we conclude that the possibility that Rexel and Paez would engage in the aforementioned conduct after the lights had been delivered to and accepted by Rexel "is sufficiently remote that a reasonable person should not be expected to anticipate such an event. To hold otherwise would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight."[18] (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 578; cf. *Ruiz* v. *Victory Properties, LLC*, supra, 336 (injuries to child caused by another child dropping piece of concrete taken from backyard of defendant landlord's apartment building were "sufficiently foreseeable that it was inappropriate for the trial court to foreclose the foreseeability question as a matter of law" when defendant landlord did "not dispute that the risk of harm created by its failure to remove the buckets, trash, broken concrete pieces and other debris from the backyard was that children playing in the area might trip on them or throw them at other children," and "unusual manner" in which injuries were sustained did not "alter [the] fundamental fact" that the injuries "[fell] squarely along the [expected] continuum of harm").

We briefly note that *Pisel* v. *Stamford Hospital*, supra, 180 Conn. 314, which the court cited in determining that Juan's workplace injuries were foreseeable, does not militate against our conclusion that the defendant owed no duty of care to protect against Juan's workplace injuries. In *Pisel*, while admitted as a patient in the defendant hospital's psychiatric unit, the decedent was found in her room, unconscious, with no pulse, blood pressure, or respiratory function, with her head wedged between the side rail and the mattress of her bed. Id., 316–17. The conservator of the decedent's estate brought an action

---

[18]We agree, in essence, with the defendant's second subclaim in support of its assertion that Juan's workplace injuries were not reasonably foreseeable. As such, we need not delve into the merits of the defendant's first subclaim predicated on its contention that its presumed failure to secure the lights to the pallet was a "shipping error" that could not form the basis of liability for Juan's workplace injuries.

against the defendant hospital for malpractice.[19] Id., 316. The jury returned a verdict against the defendant hospital, which thereafter filed an appeal. Id. One of the defendant hospital's claims on appeal was that the trial court improperly failed to instruct the jury that the defendant hospital "could not be held liable for a bizarre or unusual occurrence which it had no reason to foresee . . . ." Id., 332. Our Supreme Court rejected this claim, determining that "so long as harm of the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizarre or unforeseeable. . . . The foreseeability issue, put in proper perspective, is not very complex. It was a jury question whether the defendant [hospital] could have anticipated that harm would come to the [decedent] from the steel frame bed given all the factors which the defendant [hospital] knew or should have known. The jury's affirmative answer cannot be disturbed." (Citations omitted.) Id., 333. Later in its decision, in addressing the issue of proximate cause, our Supreme Court rejected the defendant hospital's separate argument that "it should not be liable for the [decedent's] injuries . . . because the injuries came about in an unusual, unforeseeable manner"; id., 341; determining that "[u]nusual or bizarre results can become a factor on the question of proximate cause, but only when with the benefit of hindsight it appears highly extraordinary that the actor's negligent conduct should have brought about the plaintiff's injury. . . . Applying that test to this case we do not find it extraordinary that a psychotic patient who is delusional and whose view of space and distance is distorted might wedge herself between a mattress and a side rail in attempting either to hurt herself or to extricate herself from what may have appeared to her to be her place of confinement." (Citations omitted.) Id., 341–42.

Unlike in *Pisel*, the issue in this appeal is not whether Juan's workplace injuries came about in an "unusual,

___

[19]The conservator also asserted a claim of malpractice against a doctor, in favor of whom the jury returned a verdict. *Pisel* v. *Stamford Hospital*, supra, 180 Conn. 316.

bizarre or unforeseeable" manner; id., 333; rather, the issue before us is whether Juan's workplace injuries were a reasonably foreseeable consequence of the defendant's presumed failure to secure the lights to the pallet when taking into account the conduct of Rexel and Paez after the lights had been delivered to and accepted by Rexel. Put simply, *Pisel* does not undermine our resolution of the defendant's duty of care claim.

The plaintiffs advance three additional reasons to support the imposition of a duty on the defendant. First, the plaintiffs contend that, pursuant to the testimony of their expert witness, Singh, the defendant's presumed failure to stretch wrap the lights to the pallet violated the industry standard of care[20] and "it was the defendant's responsibility to make sure that the design of the packaging extended to the point of sale and down the supply chain." Assuming that Singh's testimony, in fact, supports the plaintiffs' proposition, such testimony has no bearing on our conclusion that Juan's workplace injuries were not reasonably foreseeable in light of the conduct of Rexel and Paez.

Second, the plaintiffs argue that the defendant owed a duty of care to Juan on the basis of "the ongoing commercial and business relationship between the defendant and Rexel, [counterclaims that were filed in the present action], and the standard terms and conditions between Rexel and the defendant [in contracts that they executed] . . . ." As the defendant notes in its reply brief and as the parties recognized during argument on the defendant's motion for judgment notwithstanding the verdict, no contracts setting forth such terms and conditions were

---

[20]"[E]vidence of custom in the trade may be admitted on the issue of the standard of care, but it is not conclusive. . . . [I]n most cases reasonable prudence is in fact common prudence; but strictly it is never its measure . . . . Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission. . . . The trier of fact is not bound by the industry standard, but rather should consider it in light of the totality of the evidence presented in the case." (Citations omitted; internal quotation marks omitted.) *McDermott* v. *State*, 316 Conn. 601, 614–15, 113 A.3d 419 (2015).

entered into the evidentiary record during trial. In any event, insofar as the plaintiffs advance their argument by relying on contracts executed by the defendant and Rexel, their "ongoing commercial and business relationship," or counterclaims filed in the present action, the plaintiffs' analysis is limited to two paragraphs with no record citations or substantive legal analysis. In other words, we conclude that the plaintiffs have abandoned this issue as inadequately briefed. See *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 534 n.7, 119 A.3d 541 (2015) ("It is well established that [w]e are not obligated to consider issues that are not adequately briefed. . . . Issues are deemed inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion . . . [and] when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Citation omitted; internal quotation marks omitted.)).

Third, the plaintiffs claim that the defendant's own policies and procedures, as testified to by its warehouse manager, Damian Fritz, support imposing a duty of care on the defendant. At trial, Fritz testified that (1) it was the defendant's policy to secure outbound products to shipping pallets, (2) products "need[ed] to be secured to a pallet to secure in transportation," and (3) people loading and unloading products could get hurt if the products were unsecured. We perceive nothing in Fritz' testimony that cuts against our conclusion that Juan's workplace injuries were not a reasonably foreseeable consequence of the defendant's presumed failure to stretch wrap the lights to the pallet before it was shipped.

In sum, we conclude that, as a matter of law, Juan's workplace injuries were not a reasonably foreseeable consequence of the defendant's presumed failure to secure the lights to the pallet. Accordingly, we further conclude that the court, in denying the defendant's postverdict motion for judgment notwithstanding the verdict, improperly determined that the defendant owed a duty of care to protect against Juan's workplace injuries.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion for judgment notwithstanding the verdict and to render judgment for the defendant.

In this opinion the other judges concurred.